UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Lyman Holding Company, et al.,

Debtors.[1]

Chapter 11 Case No. 11-45190

(Jointly Administered)

## UNSWORN DECLARATION OF CYNTHIA A. MOYER
## WITH EXHIBITS IN FINAL FORM RELATING TO SALE MOTION

1. I am one of the attorneys representing the Debtors in these cases.

2. Attached as exhibits are the following documents, all of which have been revised since they were filed on August 29, 2011 as exhibits to the Unsworn Declaration of Cynthia A. Moyer with Exhibits Relating to Sale Motion [docket no. 135], and which the Debtors believe are now in their final form:

Exhibit A: Notice of Sale and Bidding Procedures, and

Exhibit B: Lyman Holding Company Bidding Procedures.


Dated: August 30, 2011           */e/ Cynthia A. Moyer*
                                 Cynthia A. Moyer

4982762

---

[1] Jointly administered estates of the following Debtors: Lyman Holding Company Case No. BKY 11-45190, Lyman Lumber Company Case No. BKY 11-45191, Automated Building Components, Inc. Case No. BKY 11-45192, Building Materials Wholesalers, Inc. Case No. BKY 11-45193, Carpentry Contractors Corp. Case No. BKY 11-45194, Construction Mortgage Investors Co. Case No. BKY 11-45196, Lyman Development Co. Case No. BKY 11-45199, Lyman Lumber Wisconsin, Inc. Case No. BKY 11-45201, Lyman Properties, L.L.C. Case No. BKY 11-45202, Mid-America Cedar, Inc. Case No. BKY 11-45203, Woodinville Lumber, Inc. Case No. BKY 11-45204, Woodinville Construction Services, L.L.C. Case No. BKY 11-45206.

# Exhibit A

**(Notice of Sale and Bidding Procedures)**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Lyman Holding Company, et al.,                     Chapter 11 Case No. 11-45190

           Debtors.[1]                                          (Jointly Administered)

_____

**NOTICE OF SALE AND BIDDING PROCEDURES**
_____

       To: The United States Trustee, All Creditors, All Shareholders, and Other Parties-In-Interest:

      **NOTICE**: On **October 6, 2011, at 10:00 a.m.** in Courtroom No. 2B, United States Courthouse, 316 North Robert Street, St. Paul, Minnesota, or such later date as provided in the Bidding Procedures,[2] the Debtors in these cases will ask the Court to approve a sale of a substantial part of the Debtors' assets related to their Minnesota and Wisconsin and Washington operations (the "Assets") free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens"), with all such Liens to attach to the sale proceeds (the "Sale Approval Hearing"). The Sale Approval Hearing may be continued from time to time without further notice, except by the announcement in open court of the time and place of such continued Sale Approval Hearing.

      The Assets will be sold pursuant to the Bidding Procedures approved by the Bankruptcy Court on August 25, 2011. The Bidding Procedures contemplate the sale of Assets on a going concern basis. The Debtors have identified a "stalking horse" bidder with respect to the largest part of Assets: SP Asset Management, LLC. If no higher or better bids are obtained, the Debtors will sell the Assets which are subject to the Asset Purchase Agreement ("APA") with the Stalking Horse pursuant to the terms of the APA was filed after the August 30, 2011 hearing and attached to the Declaration of _____.

      The Debtors sponsor the Lyman Lumber and Affiliated Companies Defined Benefit Plan. The pension plan is a covered plan under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2006 & Supp. III 2009). In determining the highest and best offer, the Debtors will consider in their discretion, among other factors, whether any bidder proposes to assume any liabilities, including liabilities relating to the defined benefit plan.

      The Bidding Procedures set the following deadlines:

          Qualified Bids                    3:00 p.m., October 3, 2011
          Auction                                10:00 a.m., October 5, 2011

---

[1] Jointly administered estates of the following Debtors: Lyman Holding Company Case No. BKY 11-45190, Lyman Lumber Company Case No. BKY 11-45191, Automated Building Components, Inc. Case No. BKY 11-45192, Building Materials Wholesalers, Inc. Case No. BKY 11-45193, Carpentry Contractors Corp. Case No. BKY 11- 5194, Construction Mortgage Investors Co. Case No. BKY 11-45196, Lyman Development Co. Case No. BKY 11-45199, Lyman Lumber Wisconsin, Inc. Case No. BKY 11-45201, Lyman Properties, L.L.C. Case No. BKY 11-45202, Mid-America Cedar, Inc. Case No. BKY 11-45203, Woodinville Lumber, Inc. Case No. BKY 11-45204, Woodinville Construction Services, L.L.C. Case No. BKY 11-45206.

[2] Capitalized terms not defined in this notice have the meaning ascribed to them in the Motion for Orders (I) Authorizing Debtors, to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Authorizing Assumption and Assignment or Rejection of Unexpired Leases and Executory Contracts; (III) Approving Bidding Procedures and Auction; (IV) Approving Break Up Fee and Expense Reimbursement; (V) Approving Form and Manner of Notice; and (VI) Scheduling Further Hearing (the "Sale Motion") (Docket #19).

Sale Approval Hearing     10:00 a.m., October 6, 2011

You are encouraged to review the Sale Motion, APA, the Bidding Procedures, and other related papers, which are available on request from the Debtors' undersigned counsel.

The Debtors will give separate notice of any unexpired leases and executory contracts to be rejected by the Debtors or assumed and assigned, and the cure amounts associated with such assumptions and assignments.

**Objections to the relief to be requested must be served on the parties below and must also be served and filed in accordance with Local Rule 9006-1(c) within five days before the Sale Approval Hearing. Any objector must file a timely objection and also appear at the Sale Approval Hearing.**

| **Debtors:** | **United States Trustee:** | **Official Committee of Unsecured Creditors:** |
|---|---|---|
| James L. Baillie | Sarah Wencil | David E. Runck |
| Douglas W. Kassebaum | U.S. Trustee's Office | Connie Lahn |
| Fredrikson & Byron, P.A. | 1015 U.S. Courthouse | Fafinski Mark & Johnson, P.A. |
| 200 South Sixth Street | 300 South Fourth Street | 400 Flagship Corporate Center |
| Suite 4000 | Minneapolis, MN 55415 | 775 Prairie Center Drive |
| Minneapolis, MN 55402 | (612) 334-1350 | Eden Prairie, MN 55344 |
| (612) 492-7000 | Fax (612) 335-4032 | (952) 995-9500 |
| Fax (612) 492-7077 | | Fax (952) 995-9577 |

| **Prepetition Lenders Counsel:** | **Stalking Horse Counsel:** |
|---|---|
| John R. McDonald | Donald E. Rothman |
| Briggs and Morgan, P.A. | Steven Fox |
| 2200 IDS Center | Riemer & Braunstein LLP |
| 80 South 8th Street | New York Office: |
| Minneapolis, MN 55402 | Seven Times Square, Suite 2506 |
| (612) 977-8697 | New York, New York 10036 |
| Fax (612) 977-8650 | (617) 880-3556 |
| | Fax (617) 692-3556 |

Additional information may also be obtained on request from the Debtors' attorneys.

             FREDRIKSON & BYRON, P.A.

Dated: August ___, 2011    */e/ James L. Baillie*
             James L. Baillie (#3980)
             Douglas W. Kassebaum (#386802)
             200 South Sixth Street, Suite 4000
             Minneapolis, MN 55402
             Phone (612) 492-7000
             Fax (612) 492-7077
             jbaillie@fredlaw.com
             dkassebaum@fredlaw.com

4967372           ATTORNEYS FOR DEBTORS

# Exhibit B

**(Lyman Holding Company Bidding Procedures)**

# LYMAN HOLDING COMPANY
# BIDDING PROCEDURES

## A. Introduction and Background

Lyman Holding Company ("LHC") and its affiliates, Lyman Lumber Company, Automated Building Components, Inc., Building Material Wholesalers, Inc., Carpentry Contractors Corp., Construction Mortgage Investors Co., Lyman Development Co., Lyman Lumber of Wisconsin, Inc., Lyman Properties, L.L.C., Mid-America Cedar, Inc., Woodinville Lumber, Inc. and Woodinville Construction Services, L.L.C. ("Debtors") are debtors and debtors in possession in Chapter 11 cases, jointly administered as Case No. 11-45190, pending in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court").

The Bankruptcy Court has authorized certain of the Debtors to enter into an agreement for sale of a substantial part of the assets of certain Debtors[1] to SP Asset Management LLC (or one or more designees, the "Stalking Horse") pursuant to its bid (the "Stalking Horse Bid") and a signed asset purchase agreement ("Asset Purchase Agreement" or "APA"), but subject to and in accordance with the process described in the procedures described below ("Bidding Procedures") as to the assets proposed to be sold in the APA.

In addition to the transaction contemplated by the Stalking Horse Bid, the Bankruptcy Court has also authorized the Debtors to offer for sale the Assets which are not assets covered by the APA. Interested parties should contact Alliance Management ("Alliance") for details. The Debtors are authorized but not directed to follow these Bidding Procedures as to such Assets. Assets sold by this method may be subject to minimum bids.

The Auction will be managed by Alliance Management ("Alliance"). A description of the Debtors' Assets that are available for sale is contained in a Confidential Offering Memorandum ("Offering Memorandum") prepared by Alliance and is available to parties who sign confidentiality agreements and are approved by Alliance as Qualified Bidders, as described below.

## B. Key Dates

The key dates for this process are as follows:

- August 5, 2011 .................................................................................... Sale Motion
- August 25, 2011 .................................................................. Sale Procedures Hearing
- October 3, 2011 at 3:00 p.m. Central Time ............................................ Bid Deadline
- October 5, 2011 ..................................................................................... Auction Date

---

[1] The following Debtors are parties to the Stalking Horse APA: Lyman Holding Company, Case No. BKY 11-45190; Lyman Lumber Company, Case No. BKY 11-45191; Automated Building Components, Inc., Case No. BKY 11- 45192; Building Materials Wholesalers, Inc., Case No. BKY 11-45193; Carpentry Contractors Corp., Case No. BKY 11-45194; Construction Mortgage Investors Co., Case No. BKY 11-45196; Lyman Development Co., Case No. BKY 11-45199; Lyman Lumber Wisconsin, Inc., Case No. BKY 11-45201; and Lyman Properties, L.L.C. Case No. BKY 11-45202.

- October 6, 2011..........................................................................Sale Approval Hearing

The Debtors may extend the key dates in the sale process. If, by October 2, 2011, the Debtors determine that one or more Qualified Bidders (as defined below) is likely to provide a Qualified Bid (as defined below) but is unable to so by the Bid Deadline, then upon written notice via electronic mail to the Stalking Horse, certain prepetition secured lenders (the "Prepetition Lenders"),[2] the Official Committee of Unsecured Creditors (the "Committee"), and all Qualified Bidders, the Debtors may extend the sale process to the following dates:

- October 17, 2011 at 3:00 p.m. Central Time ...........................................Bid Deadline
- October 19, 2011................................................................................Auction Date
- October 20, 2011................................................................... Sale Approval Hearing

### C.  Stalking Horse Bid

On August 25, 2011, the Debtors entered into the APA with the Stalking Horse. A copy of the APA is available through Alliance or Debtors' counsel. The APA provides for a Break-Up Fee (including an expense reimbursement) in the aggregate amount of $750,000 (which amount is exclusive of, and in addition to, the Up-Front Reimbursement provided for in the APA). The assets to be acquired by the Stalking Horse are described in the APA. Other interested bidders will have opportunities to bid on all the assets described in the APA, on part of those assets, or on other assets belonging to the Debtors and any liabilities related to the defined benefit plan, which are not included in the APA.

The Debtors sponsor the Lyman Lumber and Affiliated Companies Defined Benefit Plan. The pension plan is a covered plan under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1301-1461 (2006 & Supp. III 2009).

### D.  Qualified Bidder

To participate in the sale process, conduct due diligence and be entitled to submit a bid, a party must deliver to Alliance:

1. A signed confidentiality agreement reasonably satisfactory to Alliance and the Debtors; and

2. Audited (if in existence) or unaudited financial statements and/or other forms of financial disclosure acceptable to Alliance and the Debtors demonstrating the party's ability to consummate a transaction with the Debtors.

---

[2] The Debtors' secured lender group consists of (i) U.S. Bank National Association, a national banking association, as both a lender and administrative agent ("Agent") to the other lenders, and (ii) TCF National Bank, a national banking association, (iii) BMO Harris Bank N.A., successor-by-merger to M&I Marshall & Ilsley Bank, a Wisconsin state banking corporation, (iv) Bank of America, N.A., a national banking association, successor through merger to Bank of America National Trust & Savings Association, a national banking association, (v) Wells Fargo Bank, National Association, a national banking association, (vi) JPMorgan Chase Bank, N.A., a national banking association, and (vii) The Prudential Insurance Company of America, a New Jersey stock life insurance corporation.

A party who submits those documents and is determined by Alliance to be reasonably likely to submit a Qualified Bid (as defined below) is a "Qualified Bidder".

### E. Due Diligence

Qualified Bidders may be offered the opportunity to conduct reasonable due diligence so long as the sale process is ongoing until the Bid Deadline.

### F. Bid Deadline

The deadline for Qualified Bids is the Bid Deadline set forth in Section B or such later date to which the Bid Deadline may be extended by the Debtors. However, the Bid Deadline may not be extended beyond commencement of the Auction. The Qualified Bid must be submitted to the Debtors, c/o Alliance Management, Inc., 601 Carlson Parkway, Carlson Towers, Suite 110, Minneapolis, MN 55305 (Attn: James H. Cullen, jcullen@alliancemgmt.com, (952) 475-2224 (fax), and Brock Kline, bkline@alliancemgmt.com, (952) 475-2224 (fax)), and to Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402 (Attn: James L. Baillie, jbaillie@fredlaw.com, (612) 492-7077 (fax), and Thomas Steichen, tsteichen@fredlaw.com, (612) 492-7077 (fax)).

### G. Qualified Bid

To be eligible to participate at the Auction, a Qualified Bidder must, no later than the Bid Deadline, submit to Alliance a package (the "Bid Package") that includes **all** of the following items:

  a. A signed confidentiality agreement in the form provided.

  b. The identity of the party submitting the bid and any other participation in the bid.

  c. A written acknowledgment by the Qualified Bidder and each participant in such bid that it/they agrees to all of the terms set forth in these Bidding Procedures.

  d. Written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and acceptance of the terms of sale set forth in these Bidding Procedures, or representation that no such authorization or approval is required.

  e. Audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence, satisfactory to Alliance, of the financial ability to close under its asset purchase agreement within the deadline described above.

3

f.  A signed asset purchase agreement in the form of the Asset Purchase Agreement signed by the Stalking Horse "red-lined" to show any modifications required by the Qualified Bidder. Such asset purchase agreement shall be without contingency for financing or further due diligence and shall not contain any provision for the payment of a break-up fee or expense reimbursement to the Qualified Bidder. All modifications reflected in the asset purchase agreement must be acceptable to the Debtors, in consultation with Alliance, and to any other first secured lender (if any modifications would result in less than full payment of such liens). The Debtors, in consultation with Alliance, will use their sole discretion and reasonable judgment in valuing such changes and the value of any non-cash consideration to determine the total value of the bid. Additionally, in their discretion, the Debtors will consider the assumption of liabilities, including liabilities relating to the defined benefit pension plan, contemplated by each proposed bid, but are not obligated to give dollar for dollar credit for any such assumption of liabilities. The new asset purchase agreement must also include a list of unexpired leases and executory contracts to be assumed and assigned to the bidder. Such bid for the same set of assets described in the APA must be irrevocable and on terms at least as favorable to the Debtors as those set forth in the APA, and provide for a cash purchase price net to the Debtor that is at least equal to the sum of (i) that set forth in the APA, (ii) the Break-Up Fee (i.e., $750,000), and (iv) $250,000.

g.  Either in the Asset Purchase Agreement or in a separate document, an allocation of the purchase price being bid designated either by entity, location or asset type, or all.

h.  A deposit ("Deposit") in the amount of $1,000,000 in the form of a cashier's check or wire transfer of immediately available funds payable to the order of Fredrikson & Byron, P.A., counsel for Debtors, which will be returnable to the bidder as set forth in Paragraph J below. All Deposits will be held in a segregated account.

The Debtors, in consultation with Alliance, will analyze each Bid Package based upon the criteria detailed above, and based on the capability to close a transaction, and the bid's impact on all constituents of Debtors, and the amount of the bid, (taking into account in their discretion and among all other factors the terms and conditions of any assumed debt obligations, including the liabilities relating to the defined benefit plan) to determine which bids constitute "Qualified Bids" and thus entitle the bidder to participate in the auction ("Qualified Bid"). For purpose of the Auction, the Stalking Horse, TCF National Bank, U.S. Bank, N.A., and U.S. Bank N.A. in its capacity as agent will be Qualified Bidders without requirement of further deposit. Alliance may, at any time, contact bidders to discuss or clarify terms and to indicate any terms, which may need to be modified in order to conform the bid such that it can be treated as a Qualified Bid. Alliance shall provide a list of Qualified Bids and each corresponding Bid Package to counsel for the Committee of Unsecured Creditors, the Stalking Horse, the

4

Prepetition Lender and each Qualified Bidder and counsel for each of them no later than twenty-four hours after receipt.

### H. Auction

Qualified Bidders who are deemed to have submitted a Qualified Bid will convene on the Auction Date at 10:00 a.m. at the offices of Fredrikson & Byron, P.A., Suite 4000, 200 South Sixth Street, Minneapolis, Minnesota, 55402 or at such other location selected by Fredrikson & Byron with written notice to each party that has submitted a Qualified Bid for the Action (the "Auction"). If no Qualified Bid is received other than the Stalking Horse Bid, no Auction will take place. The Auction may be postponed by announcement by Alliance, but not beyond October 20, 2011 without the consent of the Stalking Horse. Alliance may establish and announce rules for the conduct of the Auction and may modify those rules in its discretion, following consultation with the Stalking Horse and so long as such rules are consistent with these Bidding Procedures. Alliance may separately auction any part of the property in any order in its sole discretion.

As to any property included in the Stalking Horse Bid, bidding shall proceed by open auction with the Stalking Horse Bid and all Qualified Bidders offered the opportunity to increase their bids in increments of at least $250,000 with the right of the Stalking Horse to counterbid. In addition, the Stalking Horse shall be entitled to credit bid the full amount of the Break-Up Fee (or any lesser portion thereof in the discretion of the Stalking Horse) as a component of any bid submitted by it at the Auction. When such bidding has ceased, the two bids that are deemed by Alliance, on behalf of Debtors, to be the highest and best bids will be announced at the close of the bidding. The highest and best bid is referred to herein as the "Prevailing Bid" and the maker of such bid the "Prevailing Bidder." The next highest and best bid will be the "Back-Up Bid" and the maker of the bid will be the "Back-Up Bidder;" provided, however, unless the Stalking Horse, in its sole discretion, makes the election provided for in the APA, the Stalking Horse shall not be the Back-Up Bidder. If the Stalking Horse Bid is not the Prevailing Bidder or the Back-Up Bidder which ultimately becomes the successful buyer and the property is sold to another party, the Break-Up Fee shall be paid under the conditions and as described in the APA.

As to any property offered for sale at an auction that constitutes the collateral of the Prepetition Lenders, but subject to any minimum bid price applicable to all bidders and to any objections timely filed by the Committee pursuant to the Final Order Authorizing Debtors to Use Cash Collateral and Provide Adequate Protection (the "Final Cash Collateral Order"), the Prepetition Lenders shall have the right to credit bid their claims to the fullest extent permitted by law and be treated as a Qualified Bidder, without the necessity of making any deposits required of Qualified Bidders; *provided, however*, that (a) to the extent that any other right of the Prepetition Lenders to credit bid must be established, such terms shall be established by the Debtors, the Prepetition Lenders and the Committee or, failing that, under terms established by later order of the Bankruptcy Court at a hearing scheduled to occur at 11:30 a.m. on September 21, 2011, and (b) the right to credit bid shall not preclude the Debtors from seeking an order to limit for cause the credit bid of an assignee of or other successor to the Prepetition Lenders' claims.

As to any property offered for sale at an auction that constitutes the collateral of the TCF National Bank ("TCF") or US Bank, N.A. in its capacity as agent ("US Bank"), TCF and US Bank will have the right to credit bid under terms to be established by the Debtors and TCF or the Debtors and US Bank or, failing that, under terms established by later order of the Bankruptcy Court at hearing scheduled to occur at 11:30 a.m. on September 21, 2011. All bidders seeking to acquire any of TCF Real Property or US Bank Real Property must allocate the portion of their bid applicable to each such TCF Real Property that such bidder intends to acquire. "TCF Real Property" means the following parcels of real property located at: a) Chanhassen, Minnesota, b) Cottage Grove, Minnesota; c) Excelsior, Minnesota (Automated Building Components Kitchen facility); d) Eau Claire, Wisconsin; e) Chetek, Wisconsin; and f) Woodinville, Washington. "US Bank Real Property" means the parcels of real estate located at: (g) Montrose, Minnesota and (h) Longview, Minnesota.

In determining which bid constitutes the "Prevailing Bid" or "Prevailing Bids" and the "Back-Up Bid" or "Back-Up Bids," the Debtors, in consultation with Alliance, will use their reasonable judgment and may consider, among other things: (i) the purchase price offered in the bid; (ii) any assumed debt obligations or liabilities, including the liabilities relating to the defined benefit pension plan without the obligation of giving dollar for dollar credit for any such assumptions); (iii) the bidder's financial situation and wherewithal; (iv) the probability of prompt closing; (v) ability to demonstrate adequate assurance of future performance for all unexpired leases and executory contracts to be assumed and assigned and the treatment of any resulting cure amounts; (vi) the best interests of creditors and the estates and (vii) whether a bid requires the payment of the Break-Up Fee and Expense Reimbursement. Debtors may also consider different combinations of bids and may withdraw assets from the bidding to become part of a plan of reorganization.

Debtors and Alliance will keep the Committee of Unsecured Creditors, the Stalking Horse and the Prepetition Lenders and counsel for each of them informed concerning the sale process and the foregoing decision.

No additional bids may be submitted or considered after the Auction.

**EACH BID – INCLUDING BIDS CONTAINED IN THE BID PACKAGE – SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE QUALIFIED BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THE EARLIER OF 48 HOURS AFTER THE SALE OF THE ASSETS HAS CLOSED OR THIRTY (30) DAYS AFTER THE APPROVAL HEARING, SUBJECT TO EXTENSION CONSISTENT WITH THE APA.**

I. **Sale Approval Hearing**

At the Sale Approval Hearing the Debtors will seek Bankruptcy Court approval of the Prevailing Bid(s) and of the Back-Up Bid(s). In the event that a Prevailing Bidder(s) cannot or refuses to consummate the sale because of the breach or failure on the part of the Prevailing Bidder(s), Debtors will be permitted to close with the Back-Up Bidder(s) on the Back-Up Bid(s) without further order of the Court. Debtors' presentation to the Bankruptcy Court for approval

of those particular bids does not constitute acceptance of any bids. Debtors have accepted a bid only when the Bankruptcy Court, following the Sale Approval Hearing, has approved the sale.

**J.	Closing**

Except to the extent of any contrary provision in the APA (in the case of the Stalking Horse) or the asset purchase agreement of any Prevailing Bidder or Back-Up Bidder, the closing (the "Closing") shall occur within five (5) days after the Bankruptcy Court has approved the sale, subject to the right of Debtors and the Prevailing Bidder, or the Back-Up Bidder as the case may be, to extend such date consistent with such party's asset purchase agreement.

Each Deposit submitted pursuant to these Bidding Procedures will be held in escrow until the selection of the Prevailing Bidder and the Back-Up Bidder, as to all other bidders, or forty-eight (48) hours after closing of the sale of the assets to the Prevailing Bidder as to the Back-Up Bidder.

**K.	General**

These Bidding Procedures are subject to modification from time to time by Alliance, as circumstances may warrant, following consultation with and prior consent of the Stalking Horse and consultation with the Prepetition Lenders and Committee. In the event that a modification is not consented to by the Stalking Horse, which consent shall not be unreasonably withheld, such modification shall permit the Stalking Horse to withdraw its bid without any liability to the Debtors, their estates, creditors or other interested parties, in which case the Stalking Horse shall be entitled to the Break-Up Fee. Debtors shall promptly notify parties in interest and prospective bidders of any such modifications. No bidder has any rights against Debtors, their estates, Alliance, any of the Debtors' other professionals or the Stalking Horse by virtue of any modification of these Bid Procedures, or by virtue of having or not having its bid accepted by Debtors or approved by the Bankruptcy Court.

**L.	Terms of Sale**

Except to the extent of any contrary provision in the APA of the Stalking Horse of any other Prevailing Bidder or Back-Up Bidder, the sale of the assets shall be on an "AS IS, WHERE IS" basis and without representation or warranties of any kind, nature or description by Debtors or their agents, except as provided in an asset purchase agreement accepted by Debtors and approved by the Bankruptcy Court in the Sale Order. All of the Debtors' right, title and interest in and to the assets shall be sold free and clear of all liens, encumbrances, claims, and interests to the full extent available under Bankruptcy Code section 363, with such liens, encumbrances, claims and interests to attach to the net proceeds of the sale.

**M.	Reservation of Rights**

Debtors in consultation with Alliance may (a) determine, in their business judgment and based on the criteria outlined herein, which bids are the highest and best bids for the assets and in the best interests of Debtors' estates; and (b) except as to the Stalking Horse Bid, reject at any time before entry of an order by the Bankruptcy Court approving a Prevailing Bid (or Back-Up

Bid), any bid that, in the Debtors' discretion, is (i) inadequate or insufficient based on the criteria outlined herein, (ii) not in conformity with these Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of Debtors and the Debtors' estates; and (c) modify these procedures as set forth herein as required to best accomplish the sale or reorganization of the Debtors.

### N. Debtors' Consultation with Key Parties

In the context of these Bidding Procedures, the Debtors will consult with the Prepetition Lenders and the Committee with respect to issues relating to (i) extending the deadlines in the Bidding Procedures, (ii) designating a Qualified Bidder; (iii) determining whether a bid is a Qualified Bid; (iv) curing deficiencies to become a Qualified Bid; (v) choosing the Prevailing Bid(s) and Back-Up Bid(s); and (vi) modifying these Sale Procedures.

4951817v18