UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Lyman Holding Company, et al.,

Debtors.[1]

Chapter 11 Case No. 11-45190

(Jointly Administered)

**ORDER (I) AUTHORIZING DEBTORS TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) APPROVING BIDDING PROCEDURES AND AUCTION; (III) APPROVING BREAK UP FEE AND EXPENSE REIMBURSEMENT; (IV) APPROVING FORM AND MANNER OF NOTICE; (V) SCHEDULING FURTHER HEARING; AND (VI) GRANTING CERTAIN RELATED RELIEF**

This case came before the court on the debtors' Motion for Orders (I) Authorizing Debtors to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Authorizing Assumption and Assignment or Rejection of Unexpired Leases and Executory Contracts; (III) Approving Bidding Procedures and Auction; (IV) Approving Break-Up Fee and Expense Reimbursement; (V) Approving Form and Manner of Notice; and (VI) Scheduling Further Hearing ("Sale Motion").[2]

Based on the Sale Motion, all the files, records and proceedings herein, the Court being advised in the premises,

---

[1] Jointly administered estates of the following Debtors: Lyman Holding Company Case No. BKY 11-45190, Lyman Lumber Company Case No. BKY 11-45191, Automated Building Components, Inc. Case No. BKY 11-45192, Building Materials Wholesalers, Inc. Case No. BKY 11-45193, Carpentry Contractors Corp. Case No. BKY 11-45194, Construction Mortgage Investors Co. Case No. BKY 11-45196, Lyman Development Co. Case No. BKY 11-45199, Lyman Lumber Wisconsin, Inc. Case No. BKY 11-45201, Lyman Properties, L.L.C. Case No. BKY 11-45202, Mid-America Cedar, Inc. Case No. BKY 11-45203, Woodinville Lumber, Inc. Case No. BKY 11-45204, Woodinville Construction Services, L.L.C. Case No. BKY 11-45206.

[2] All capitalized terms used but not otherwise defined in this order shall have the meanings ascribed to them in the Sale Motion or the APA, as applicable.

**IT IS FOUND AND DETERMINED THAT**:[3]

A. The court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Attached to the Sale Motion as Exhibit D was a term sheet that described a transaction in which certain of the debtors will sell a substantial part of their assets ("Acquired Assets") to a proposed stalking horse bidder ("Stalking Horse"). Subsequently a copy of an Asset Purchase Agreement ("APA") further describing the transaction has been filed with the court and has been made available for review by parties in interest.

C. The debtors will offer other assets to sell pursuant to the auction process which will not be part of the Acquired Assets described on the APA.

D. The debtors have articulated good and sufficient reasons for approving the Sale Motion.

E. Due and proper notice of the Sale Motion was provided with respect to the relief granted in this order and no other or further notice need be provided.

F. The process for selecting the Stalking Horse (as defined in this order) was fair and appropriate under the circumstances and is in the best interests of the debtors' estates.

G. The debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee, as defined and set forth in the APA.

H. The Break-Up Fee and Expense Reimbursement are fair and reasonable and provide a benefit to the debtors' estates and parties in interest in these cases.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. 7052.

I. The debtors' obligation to the Stalking Horse (under the conditions and as set forth in the APA) for the Break-Up Fee and Expense Reimbursement (a) is the result of arm's-length negotiations among the parties that were not tainted by self-dealing or manipulation, (b) is reasonably tailored to encourage, rather than hamper, bidding for the debtors' assets, (c) is an actual and necessary cost and expense of preserving the debtors' assets, within the meaning of section 503(b) of the Bankruptcy Code, (d) is of substantial and commensurate benefit to the debtors' estates, (e) is reasonable and appropriate, in light of the size and nature of the transaction and the substantial efforts that have been and will be expended by the Stalking Horse and the benefits the Stalking Horse is providing to the debtors' estates, creditors and all parties in interest, (f) is necessary to ensure that the Stalking Horse will continue to pursue its proposed acquisition of the Acquisition Assets, (g) is necessary to establish a bid standard and minimum bid for other bidders and attract additional bidders, and (h) correlates with a maximization of value to the debtors' estates. The Break-Up Fee and the circumstances under which it becomes payable under the APA were material inducements for and conditions of, the Stalking Horse's entry into the APA.

J. The Bidding Procedures, originally attached as Exhibit D to the Sale Motion and as modified and attached in final form as Exhibit B to the Unsworn Declaration of Cynthia A. Moyer with Exhibits in Final Form Relating to Sale Motion dated August 31, 2011 ("Moyer Declaration"), are fair, reasonable, and appropriate and represent the best method for maximizing the value of the debtors' assets.

K. The entry of this order is in the best interests of the debtors and their estates, creditors and interest holders and all other parties in interest.

IT IS ORDERED:

1. The Sale Motion is granted to the extent set forth in this order.

2. The following provisions shall govern as to the transaction described in the APA. Debtors are authorized to offer for sale Assets not included as Acquired Assets in the APA at the auction described in the Sale Motion. In so doing, they are not required to follow the Bidding Procedures but may use such other methods as they deem reasonable. Any such sale will be subject to approval by the court. Any such sale may be presented for approval at the Sale Approval Hearing described in this Order.

3. The transaction contemplated by the APA, in the version executed by the parties and filed on the docket as the final version, among Lyman Holding Company, certain of its affiliates named therein as Sellers and SP Asset Management, LLC ("SP") (together with any of its affiliates or designees for purposes of consummation of the Asset Purchase Agreement, the "Stalking Horse") is designated as the Stalking Horse Bid.

4. All objections filed in response to the Sale Motion with respect to the relief granted in this order are resolved as set forth in this order and to the extent not resolved, are overruled, subject to a full reservation of rights by the Unsecured Creditors Committee on all objections relating to the value of the assets being sold. In particular, the Committee reserves all rights to oppose the sale or settlement of Avoidance Actions through the Asset Purchase Agreement, including any objections: (1) that the Avoidance Actions cannot be sold; (2) that the value of the Stalking Horse Bid is insufficient to support the sale, settlement or waiver of any Avoidance Actions; or (3) that the Avoidance Actions are not being pursued by the Debtors so they should instead be pursued by the Committee.

5. The debtors are authorized to conduct an Auction for the sale (the "Sale") of all or substantially all of their assets free and clear of all liens, claims, interests and encumbrances, with all such liens, claims, interests and encumbrances to attach to the Sale proceeds in the same order,

priority, and dignity as existed at the commencement of the cases, subject to a further hearing and final court approval following the Auction.

6. The debtors are hereby authorized to offer the assumption and assignment (the "Assignment") of unexpired leases and executory contracts and to determine Cure Amounts in connection with the Sale, subject to further hearing and final court approval of such Assignment.

7. The Bidding Procedures, as set forth on <u>Exhibit A</u> attached to this order, are approved in their entirety and the terms of which are incorporated herein by reference. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

8. The Notice of Sale, substantially in the form attached as Exhibit B to the Sale Motion and as modified and attached in final form as Exhibit A to the Moyer Declaration, is approved, and the debtors are authorized and directed to serve the Notice of Sale in the manner and upon the parties specified in the Sale Motion.

9. Pursuant to sections 105, 363, 503 and 507 of the United States Bankruptcy Code, the debtors are authorized, empowered, and directed to pay an amount equal to the Break-Up Fee to the Stalking Horse in accordance with the terms of the APA and without further order of this court. The dollar amount of the Break-Up Fee and the circumstances under which the Break-Up Fee is payable, as set forth in Section 8.3 of the APA, are approved.

10. To the extent payable under the APA, the debtors' obligation to pay the Break-Up Fee (i) shall survive termination of the APA; and, subject to Sections 8.3(c) and 8.3(d) of the APA, (ii) and shall be (x) secured by (1) a Lien and encumbrance on all of the Debtors' Encumbered Assets, which security interest shall be junior to all existing and non-avoidable, prior perfected liens and encumbrances (including the liens and encumbrances held by Sellers' Secured Lenders) and (2)

a first priority Lien and encumbrance upon all Unencumbered Assets, and (y) in the event the proceeds realized from the aforementioned Liens are insufficient to pay Buyer the balance of the Break-Up Fee, then in addition to such liens the Buyer shall be awarded an allowed administrative expense claim under Section 503(b) of the Bankruptcy Code payable out of Sellers' cash or other collateral securing Sellers' obligations to the Secured Lenders, but only after the claims of such Secured Lenders have been paid in full, but prior to any payment to other administrative claimants, unsecured creditors, claim holders, equity holders and other parties in interest, which payment shall be free and clear of all liens, claims, interests, encumbrances and administrative expenses of any and all of the Sellers' Secured Lenders or other creditors, except as otherwise expressly provided in the APA. The Sellers' obligation to pay all or any portion of the Break-Up Fee shall be joint and several, absolute, and unconditional, and any such payment shall be made in the amounts, and at the times provided for in the APA, including without limitation, the Diligence Deposit towards the Break-Up Fee as provided in Section 2.1(d) of the APA.

11. If the debtors are required pursuant to the terms of the APA to pay the Break-Up Fee, the debtors are authorized, empowered, and directed to pay such applicable amounts as provided in the APA, but in any event after payments to TCF National Bank and to US Bank of the portions of the proceeds of the Alternative Transaction allocated to real property in which TCF or US Bank holds a mortgage only insofar as any payments contemplated herein are from proceeds of such real property. The debtors' obligation to pay the Break-Up Fee shall be joint and several, absolute and unconditional.

12. This court will hold a hearing on October 6, 2011 at 10:00 a.m., or later as provided in the Bidding Procedures ("Sale Approval Hearing"), to consider final approval of the Sale and Assignment. The Sale Approval Hearing may be adjourned, from time to time, without further

notice to creditors or other parties in interest other than by announcement of said adjournment before this court or on this court's calendar on the date scheduled for the hearing.

13. Objections, if any, to the Sale Motion must be served on the Stalking Horse and all others entitled to notice and filed in accordance with local rule 9006-1(c), 9013-2, and 9013-3.

14. The procedures for determining Cure Amounts through the Closing Date of the Sale of the Acquisition Assets in accordance with the APA (including amounts of compensation for actual pecuniary loss) and the deadline for objections to the assumption and assignment of the Designated Contracts and Leases are approved.

15. At least twenty (20) days prior to the Sale Approval Hearing, the debtors shall distribute to non-debtor parties to any Designated Contracts or Leases the Initial Contract and Lease Notice, setting forth a list of executory contracts and unexpired leases the debtors intend to assume and assign to the Stalking Horse or other party in connection with the Sale including any Cure Amount necessary to compensate such non-debtor parties for actual pecuniary loss associated with such Designated Contract or Lease.

16. In the event the debtors' proposal regarding assumption and assignment of leases or contracts changes, whether due to change by the Stalking Horse or a Prevailing Bidder or Back-Up Bidder or for any other reason, the debtors shall promptly give notice of such change to the affected counter-party to the contract or lease (the "Notice of Change"). The debtors' Notice of Change shall be given at least four (4) days (including weekends and holidays) prior to the date set for the Sale Approval Hearing. In the event of any change in the identity of the assignee after the Auction, such notice shall be given as promptly as possible after the Auction.

17. The non-debtor parties to the Designated Contracts and Leases set forth on the Initial Contract and Lease Notice shall have until three days before the Sale Approval Hearing

(the "Contract Objection Deadline"), which deadline may be extended by the debtors with written consent of Stalking Horse or the Prevailing Bidder, to object to (i) the proposed assumption and assignment of such Designated Contracts or Leases in connection with the Sale or (ii) the proposed Cure Amounts set forth on the Initial Contract and Lease Notice; <u>provided</u>, <u>however</u>, if the debtors otherwise provide a Notice of Change to a non-debtor party to an Designated Contract or Lease, except where such proposed change in treatment was upon mutual agreement of the parties, the non-debtor party shall have until one (1) day prior to the Sale Approval Hearing to assert any proper objection to the proposed Assignment and/or the Cure Amount (the "Amended Contract Objection Deadline").

18. Any party objecting to (i) the proposed assumption and assignment of a Designated Contract or Lease to which it is a non-debtor counterparty or (ii) the proposed Cure Amounts set forth on the Initial Contract and Lease Notice shall be required to file and serve such objection (each, a "Contract Objection") in writing, setting forth with specificity any and all cure obligations that the objecting party asserts must be cured or satisfied in respect of the applicable Designated Contract or Lease and all objections to the potential assumption and assignment of such agreements, together with all documentation supporting such cure claim or objection, so that the objection is received no later than the Contract Objection Deadline or the Amended Contract Objection Deadline, as applicable. If such objection is timely filed, the court shall hear at the Sale Approval Hearing any such objection and determine the amount of any disputed Cure Amount or objection to assumption and assignment not settled by the parties.

19. Notwithstanding the inclusion of an executory contract or unexpired lease on any list of Designated Contracts and Leases, the Stalking Horse or Prevailing Bidder, as applicable, shall have authority, in its sole discretion, to remove any contract or lease from the list of

Designated Contracts and Leases until the later of either (i) the Closing Date, or (ii) within five (5) business days after the court sustains, in whole or in part, such non-debtor party's objection to the assumption and Assignment or the proposed Cure Amount; in either such case, the debtors shall not assume and assign such Designated Contracts or Leases to the party who removed such contract or lease from such list.

20. In the event that no Contract Objection is timely filed with respect to a Designated Contract or Lease, the applicable non-debtor party shall be deemed to have consented to (a) the proposed assumption and Assignment and (b) the Cure Amount proposed by the debtors and shall be forever enjoined and barred from seeking an additional amount on account of the debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the debtors, their estates, the Stalking Horse, the Prevailing Bidder or Back-Up Bidder, as applicable, on account of the assumption and assignment of such executory contract or unexpired lease. In addition, if no timely Contract Objection is filed, the Stalking Horse, or Prevailing Bidder or Back-Up Bidder, as applicable, shall enjoy all the rights and benefits under all Designated Contracts and Leases, as applicable, without the necessity of obtaining any party's written consent to the debtors' assumption and Assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment.

21. The Stalking Horse shall not be required to seek or obtain relief from the automatic stay under section 362 of the bankruptcy code to terminate or otherwise enforce any of its rights under the APA in accordance with the terms of the APA. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this order.

22. The debtors are authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established under this order.

23. The Stalking Horse and the Prevailing Bidder, or Back-Up Bidder, as applicable, are hereby deemed to be parties-in-interest under 11 U.S.C. § 1109(b) for purposes of the Sale Motion, the Bidding Procedures, the Auction, the Sale Approval Hearing, any Contract Objection, and any other hearing or matters arising in connection with the APA and the Sale.

24. This order shall be binding upon and inure to the benefit of the Stalking Horse, Prevailing Bidder, or Back-Up Bidder, as applicable, and their respective affiliates, successors and assigns, and the debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the debtors' estates, whether in these cases or subsequent bankruptcy cases or upon dismissal of any of these cases.

25. As to any property offered for sale at an auction that constitutes the collateral of the Secured Lenders, but subject to any minimum bid price applicable to all bidders and to any objections timely filed by the Committee pursuant to the Final Order Authorizing Debtors to Use Cash Collateral and Provide Adequate Protection (the "Final Cash Collateral Order"), the Secured Lenders shall have the right to credit bid their claims to the fullest extent permitted by law and be treated as a Qualified Bidder, without the necessity of making any deposits required by Qualified Bidders; provided, however, that (a) to the extent that any other right of the Secured Lenders to credit bid must be established, such terms shall be established by the Debtors, the Secured Lenders, and the Committee or, failing that, under terms established by later order of the Bankruptcy Court at a hearing scheduled to occur at 11:30 a.m. on September 21, 2011, and (b)

the right to credit bid shall not preclude the Debtors from seeking an order to limit for cause the credit bid of an assignee of or other successor to the Secured Lenders' claims.

26. Sellers' Secured Lenders shall be paid in full at Closing, or shall have expressly consented to the Closing even though they may or will not be paid in full at Closing. In this regard, Sellers and Buyer all waive any right under Section 363(f) of the Bankruptcy Code or otherwise to seek to compel Sellers' Secured Lenders to accept less than payment in full at closing.

27. Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon its entry.

28. To the extent this order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this order shall govern.

29. The court shall retain jurisdiction over any matters related to or arising from the implementation of this order, including, but not limited to, any matter, claim or dispute arising from or relating to the Break-Up Fee, the Bidding Procedures and the implementation of this order.

Dated: August 31, 2011

/e/ Dennis D. O'Brien
Dennis D. O'Brien
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *08/31/2011*
Lori Vosejpka, Clerk, By DLR, Deputy Clerk

4979895v8

**EXHIBIT A**

# LYMAN HOLDING COMPANY
# BIDDING PROCEDURES

### A. Introduction and Background

Lyman Holding Company ("LHC") and its affiliates, Lyman Lumber Company, Automated Building Components, Inc., Building Material Wholesalers, Inc., Carpentry Contractors Corp., Construction Mortgage Investors Co., Lyman Development Co., Lyman Lumber of Wisconsin, Inc., Lyman Properties, L.L.C., Mid-America Cedar, Inc., Woodinville Lumber, Inc. and Woodinville Construction Services, L.L.C. ("Debtors") are debtors and debtors in possession in Chapter 11 cases, jointly administered as Case No. 11-45190, pending in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court").

The Bankruptcy Court has authorized certain of the Debtors to enter into an agreement for sale of a substantial part of the assets of certain Debtors[1] to SP Asset Management LLC (or one or more designees, the "Stalking Horse") pursuant to its bid (the "Stalking Horse Bid") and a signed asset purchase agreement ("Asset Purchase Agreement" or "APA"), but subject to and in accordance with the process described in the procedures described below ("Bidding Procedures") as to the assets proposed to be sold in the APA.

In addition to the transaction contemplated by the Stalking Horse Bid, the Bankruptcy Court has also authorized the Debtors to offer for sale the Assets which are not assets covered by the APA. Interested parties should contact Alliance Management ("Alliance") for details. The Debtors are authorized but not directed to follow these Bidding Procedures as to such Assets. Assets sold by this method may be subject to minimum bids.

The Auction will be managed by Alliance Management ("Alliance"). A description of the Debtors' Assets that are available for sale is contained in a Confidential Offering Memorandum ("Offering Memorandum") prepared by Alliance and is available to parties who sign confidentiality agreements and are approved by Alliance as Qualified Bidders, as described below.

### B. Key Dates

The key dates for this process are as follows:

- August 5, 2011 .................................................................................... Sale Motion
- August 25, 2011 ................................................................... Sale Procedures Hearing
- October 3, 2011 at 3:00 p.m. Central Time ............................................ Bid Deadline
- October 5, 2011 ................................................................................... Auction Date

---

[1] The following Debtors are parties to the Stalking Horse APA: Lyman Holding Company, Case No. BKY 11-45190; Lyman Lumber Company, Case No. BKY 11-45191; Automated Building Components, Inc., Case No. BKY 11- 45192; Building Materials Wholesalers, Inc., Case No. BKY 11-45193; Carpentry Contractors Corp., Case No. BKY 11-45194; Construction Mortgage Investors Co., Case No. BKY 11-45196; Lyman Development Co., Case No. BKY 11-45199; Lyman Lumber Wisconsin, Inc., Case No. BKY 11-45201; and Lyman Properties, L.L.C. Case No. BKY 11-45202.

- October 6, 2011......................................................................... Sale Approval Hearing

The Debtors may extend the key dates in the sale process. If, by October 2, 2011, the Debtors determine that one or more Qualified Bidders (as defined below) is likely to provide a Qualified Bid (as defined below) but is unable to so by the Bid Deadline, then upon written notice via electronic mail to the Stalking Horse, certain prepetition secured lenders (the "Prepetition Lenders"),[2] the Official Committee of Unsecured Creditors (the "Committee"), and all Qualified Bidders, the Debtors may extend the sale process to the following dates:

- October 17, 2011 at 3:00 p.m. Central Time ..........................................Bid Deadline
- October 19, 2011...............................................................................Auction Date
- October 20, 2011..................................................................... Sale Approval Hearing

### C. Stalking Horse Bid

On August 25, 2011, the Debtors entered into the APA with the Stalking Horse. A copy of the APA is available through Alliance or Debtors' counsel. The APA provides for a Break-Up Fee (including an expense reimbursement) in the aggregate amount of $750,000 (which amount is exclusive of, and in addition to, the Up-Front Reimbursement provided for in the APA). The assets to be acquired by the Stalking Horse are described in the APA. Other interested bidders will have opportunities to bid on all the assets described in the APA, on part of those assets, or on other assets belonging to the Debtors and any liabilities related to the defined benefit plan, which are not included in the APA.

The Debtors sponsor the Lyman Lumber and Affiliated Companies Defined Benefit Plan. The pension plan is a covered plan under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1301-1461 (2006 & Supp. III 2009).

### D. Qualified Bidder

To participate in the sale process, conduct due diligence and be entitled to submit a bid, a party must deliver to Alliance:

1. A signed confidentiality agreement reasonably satisfactory to Alliance and the Debtors; and

2. Audited (if in existence) or unaudited financial statements and/or other forms of financial disclosure acceptable to Alliance and the Debtors demonstrating the party's ability to consummate a transaction with the Debtors.

---

[2] The Debtors' secured lender group consists of (i) U.S. Bank National Association, a national banking association, as both a lender and administrative agent ("Agent") to the other lenders, and (ii) TCF National Bank, a national banking association, (iii) BMO Harris Bank N.A., successor-by-merger to M&I Marshall & Ilsley Bank, a Wisconsin state banking corporation, (iv) Bank of America, N.A., a national banking association, successor through merger to Bank of America National Trust & Savings Association, a national banking association, (v) Wells Fargo Bank, National Association, a national banking association, (vi) JPMorgan Chase Bank, N.A., a national banking association, and (vii) The Prudential Insurance Company of America, a New Jersey stock life insurance corporation.

A party who submits those documents and is determined by Alliance to be reasonably likely to submit a Qualified Bid (as defined below) is a "Qualified Bidder".

E.    **Due Diligence**

Qualified Bidders may be offered the opportunity to conduct reasonable due diligence so long as the sale process is ongoing until the Bid Deadline.

F.    **Bid Deadline**

The deadline for Qualified Bids is the Bid Deadline set forth in Section B or such later date to which the Bid Deadline may be extended by the Debtors. However, the Bid Deadline may not be extended beyond commencement of the Auction. The Qualified Bid must be submitted to the Debtors, c/o Alliance Management, Inc., 601 Carlson Parkway, Carlson Towers, Suite 110, Minneapolis, MN 55305 (Attn: James H. Cullen, jcullen@alliancemgmt.com, (952) 475-2224 (fax), and Brock Kline, bkline@alliancemgmt.com, (952) 475-2224 (fax)), and to Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402 (Attn: James L. Baillie, jbaillie@fredlaw.com, (612) 492-7077 (fax), and Thomas Steichen, tsteichen@fredlaw.com, (612) 492-7077 (fax)).

G.    **Qualified Bid**

To be eligible to participate at the Auction, a Qualified Bidder must, no later than the Bid Deadline, submit to Alliance a package (the "Bid Package") that includes **all** of the following items:

   a.   A signed confidentiality agreement in the form provided.

   b.   The identity of the party submitting the bid and any other participation in the bid.

   c.   A written acknowledgment by the Qualified Bidder and each participant in such bid that it/they agrees to all of the terms set forth in these Bidding Procedures.

   d.   Written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and acceptance of the terms of sale set forth in these Bidding Procedures, or representation that no such authorization or approval is required.

   e.   Audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence, satisfactory to Alliance, of the financial ability to close under its asset purchase agreement within the deadline described above.

3

f.  A signed asset purchase agreement in the form of the Asset Purchase Agreement signed by the Stalking Horse "red-lined" to show any modifications required by the Qualified Bidder. Such asset purchase agreement shall be without contingency for financing or further due diligence and shall not contain any provision for the payment of a break-up fee or expense reimbursement to the Qualified Bidder. All modifications reflected in the asset purchase agreement must be acceptable to the Debtors, in consultation with Alliance, and to any other first secured lender (if any modifications would result in less than full payment of such liens). The Debtors, in consultation with Alliance, will use their sole discretion and reasonable judgment in valuing such changes and the value of any non-cash consideration to determine the total value of the bid. Additionally, in their discretion, the Debtors will consider the assumption of liabilities, including liabilities relating to the defined benefit pension plan, contemplated by each proposed bid, but are not obligated to give dollar for dollar credit for any such assumption of liabilities. The new asset purchase agreement must also include a list of unexpired leases and executory contracts to be assumed and assigned to the bidder. Such bid for the same set of assets described in the APA must be irrevocable and on terms at least as favorable to the Debtors as those set forth in the APA, and provide for a cash purchase price net to the Debtor that is at least equal to the sum of (i) that set forth in the APA, (ii) the Break-Up Fee (i.e., $750,000), and (iv) $250,000.

g.  Either in the Asset Purchase Agreement or in a separate document, an allocation of the purchase price being bid designated either by entity, location or asset type, or all.

h.  A deposit ("Deposit") in the amount of $1,000,000 in the form of a cashier's check or wire transfer of immediately available funds payable to the order of Fredrikson & Byron, P.A., counsel for Debtors, which will be returnable to the bidder as set forth in Paragraph J below. All Deposits will be held in a segregated account.

The Debtors, in consultation with Alliance, will analyze each Bid Package based upon the criteria detailed above, and based on the capability to close a transaction, and the bid's impact on all constituents of Debtors, and the amount of the bid, (taking into account in their discretion and among all other factors the terms and conditions of any assumed debt obligations, including the liabilities relating to the defined benefit plan) to determine which bids constitute "Qualified Bids" and thus entitle the bidder to participate in the auction ("Qualified Bid"). For purpose of the Auction, the Stalking Horse, TCF National Bank, U.S. Bank, N.A., and U.S. Bank N.A. in its capacity as agent will be Qualified Bidders without requirement of further deposit. Alliance may, at any time, contact bidders to discuss or clarify terms and to indicate any terms, which may need to be modified in order to conform the bid such that it can be treated as a Qualified Bid. Alliance shall provide a list of Qualified Bids and each corresponding Bid Package to counsel for the Committee of Unsecured Creditors, the Stalking Horse, the

Prepetition Lender and each Qualified Bidder and counsel for each of them no later than twenty-four hours after receipt.

### H. Auction

Qualified Bidders who are deemed to have submitted a Qualified Bid will convene on the Auction Date at 10:00 a.m. at the offices of Fredrikson & Byron, P.A., Suite 4000, 200 South Sixth Street, Minneapolis, Minnesota, 55402 or at such other location selected by Fredrikson & Byron with written notice to each party that has submitted a Qualified Bid for the Action (the "Auction"). If no Qualified Bid is received other than the Stalking Horse Bid, no Auction will take place. The Auction may be postponed by announcement by Alliance, but not beyond October 20, 2011 without the consent of the Stalking Horse. Alliance may establish and announce rules for the conduct of the Auction and may modify those rules in its discretion, following consultation with the Stalking Horse and so long as such rules are consistent with these Bidding Procedures. Alliance may separately auction any part of the property in any order in its sole discretion.

As to any property included in the Stalking Horse Bid, bidding shall proceed by open auction with the Stalking Horse Bid and all Qualified Bidders offered the opportunity to increase their bids in increments of at least $250,000 with the right of the Stalking Horse to counterbid. In addition, the Stalking Horse shall be entitled to credit bid the full amount of the Break-Up Fee (or any lesser portion thereof in the discretion of the Stalking Horse) as a component of any bid submitted by it at the Auction, with the value of any such credit bid to be determined by the Debtors and Alliance. When such bidding has ceased, the two bids that are deemed by Alliance, on behalf of Debtors, to be the highest and best bids will be announced at the close of the bidding. The highest and best bid is referred to herein as the "Prevailing Bid" and the maker of such bid the "Prevailing Bidder." The next highest and best bid will be the "Back-Up Bid" and the maker of the bid will be the "Back-Up Bidder;" provided, however, unless the Stalking Horse, in its sole discretion, makes the election provided for in the APA, the Stalking Horse shall not be the Back-Up Bidder. If the Stalking Horse Bid is not the Prevailing Bidder or the Back-Up Bidder which ultimately becomes the successful buyer and the property is sold to another party, the Break-Up Fee shall be paid under the conditions and as described in the APA.

As to any property offered for sale at an auction that constitutes the collateral of the Prepetition Lenders, but subject to any minimum bid price applicable to all bidders and to any objections timely filed by the Committee pursuant to the Final Order Authorizing Debtors to Use Cash Collateral and Provide Adequate Protection (the "Final Cash Collateral Order"), the Prepetition Lenders shall have the right to credit bid their claims to the fullest extent permitted by law and be treated as a Qualified Bidder, without the necessity of making any deposits required of Qualified Bidders; *provided, however*, that (a) to the extent that any other right of the Prepetition Lenders to credit bid must be established, such terms shall be established by the Debtors, the Prepetition Lenders and the Committee or, failing that, under terms established by later order of the Bankruptcy Court at a hearing scheduled to occur at 11:30 a.m. on September 21, 2011, and (b) the right to credit bid shall not preclude the Debtors from seeking an order to limit for cause the credit bid of an assignee of or other successor to the Prepetition Lenders' claims.

As to any property offered for sale at an auction that constitutes the collateral of the TCF National Bank ("TCF") or US Bank, N.A. in its capacity as agent ("US Bank"), TCF and US Bank will have the right to credit bid under terms to be established by the Debtors and TCF or the Debtors and US Bank or, failing that, under terms established by later order of the Bankruptcy Court at hearing scheduled to occur at 11:30 a.m. on September 21, 2011. All bidders seeking to acquire any of TCF Real Property or US Bank Real Property must allocate the portion of their bid applicable to each such TCF Real Property that such bidder intends to acquire. "TCF Real Property" means the following parcels of real property located at: a) Chanhassen, Minnesota, b) Cottage Grove, Minnesota; c) Excelsior, Minnesota (Automated Building Components Kitchen facility); d) Eau Claire, Wisconsin; e) Chetek, Wisconsin; and f) Woodinville, Washington. "US Bank Real Property" means the parcels of real estate located at: (g) Montrose, Minnesota and (h) Longview, Minnesota.

In determining which bid constitutes the "Prevailing Bid" or "Prevailing Bids" and the "Back-Up Bid" or "Back-Up Bids," the Debtors, in consultation with Alliance, will use their reasonable judgment and may consider, among other things: (i) the purchase price offered in the bid; (ii) any assumed debt obligations or liabilities, including the liabilities relating to the defined benefit pension plan without the obligation of giving dollar for dollar credit for any such assumptions); (iii) the bidder's financial situation and wherewithal; (iv) the probability of prompt closing; (v) ability to demonstrate adequate assurance of future performance for all unexpired leases and executory contracts to be assumed and assigned and the treatment of any resulting cure amounts; (vi) the best interests of creditors and the estates and (vii) whether a bid requires the payment of the Break-Up Fee and Expense Reimbursement. Debtors may also consider different combinations of bids and may withdraw assets from the bidding to become part of a plan of reorganization.

Debtors and Alliance will keep the Committee of Unsecured Creditors, the Stalking Horse and the Prepetition Lenders and counsel for each of them informed concerning the sale process and the foregoing decision.

No additional bids may be submitted or considered after the Auction.

**EACH BID – INCLUDING BIDS CONTAINED IN THE BID PACKAGE – SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE QUALIFIED BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THE EARLIER OF 48 HOURS AFTER THE SALE OF THE ASSETS HAS CLOSED OR THIRTY (30) DAYS AFTER THE APPROVAL HEARING, SUBJECT TO EXTENSION CONSISTENT WITH THE APA.**

### I.  Sale Approval Hearing

At the Sale Approval Hearing the Debtors will seek Bankruptcy Court approval of the Prevailing Bid(s) and of the Back-Up Bid(s). In the event that a Prevailing Bidder(s) cannot or refuses to consummate the sale because of the breach or failure on the part of the Prevailing Bidder(s), Debtors will be permitted to close with the Back-Up Bidder(s) on the Back-Up Bid(s) without further order of the Court. Debtors' presentation to the Bankruptcy Court for approval

of those particular bids does not constitute acceptance of any bids. Debtors have accepted a bid only when the Bankruptcy Court, following the Sale Approval Hearing, has approved the sale.

**J.      Closing**

Except to the extent of any contrary provision in the APA (in the case of the Stalking Horse) or the asset purchase agreement of any Prevailing Bidder or Back-Up Bidder, the closing (the "Closing") shall occur within five (5) days after the Bankruptcy Court has approved the sale, subject to the right of Debtors and the Prevailing Bidder, or the Back-Up Bidder as the case may be, to extend such date consistent with such party's asset purchase agreement.

Each Deposit submitted pursuant to these Bidding Procedures will be held in escrow until the selection of the Prevailing Bidder and the Back-Up Bidder, as to all other bidders, or forty-eight (48) hours after closing of the sale of the assets to the Prevailing Bidder as to the Back-Up Bidder.

**K.      General**

These Bidding Procedures are subject to modification from time to time by Alliance, as circumstances may warrant, following consultation with and prior consent of the Stalking Horse and consultation with the Prepetition Lenders and Committee. In the event that a modification is not consented to by the Stalking Horse, which consent shall not be unreasonably withheld, such modification shall permit the Stalking Horse to withdraw its bid without any liability to the Debtors, their estates, creditors or other interested parties, in which case the Stalking Horse shall be entitled to the Break-Up Fee. Debtors shall promptly notify parties in interest and prospective bidders of any such modifications. No bidder has any rights against Debtors, their estates, Alliance, any of the Debtors' other professionals or the Stalking Horse by virtue of any modification of these Bid Procedures, or by virtue of having or not having its bid accepted by Debtors or approved by the Bankruptcy Court.

**L.      Terms of Sale**

Except to the extent of any contrary provision in the APA of the Stalking Horse of any other Prevailing Bidder or Back-Up Bidder, the sale of the assets shall be on an "AS IS, WHERE IS" basis and without representation or warranties of any kind, nature or description by Debtors or their agents, except as provided in an asset purchase agreement accepted by Debtors and approved by the Bankruptcy Court in the Sale Order. All of the Debtors' right, title and interest in and to the assets shall be sold free and clear of all liens, encumbrances, claims, and interests to the full extent available under Bankruptcy Code section 363, with such liens, encumbrances, claims and interests to attach to the net proceeds of the sale.

**M.      Reservation of Rights**

Debtors in consultation with Alliance may (a) determine, in their business judgment and based on the criteria outlined herein, which bids are the highest and best bids for the assets and in the best interests of Debtors' estates; and (b) except as to the Stalking Horse Bid, reject at any time before entry of an order by the Bankruptcy Court approving a Prevailing Bid (or Back-Up

Bid), any bid that, in the Debtors' discretion, is (i) inadequate or insufficient based on the criteria outlined herein, (ii) not in conformity with these Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of Debtors and the Debtors' estates; and (c) modify these procedures as set forth herein as required to best accomplish the sale or reorganization of the Debtors.

### N. Debtors' Consultation with Key Parties

In the context of these Bidding Procedures, the Debtors will consult with the Prepetition Lenders and the Committee with respect to issues relating to (i) extending the deadlines in the Bidding Procedures, (ii) designating a Qualified Bidder; (iii) determining whether a bid is a Qualified Bid; (iv) curing deficiencies to become a Qualified Bid; (v) choosing the Prevailing Bid(s) and Back-Up Bid(s); and (vi) modifying these Sale Procedures.

4951817v18