UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Lyman Holding Company, et al.,

Debtors.[1]

Chapter 11 Case No. 11-45190

(Jointly Administered)

**FINAL ORDER AUTHORIZING
DEBTORS TO USE CASH COLLATERAL
AND PROVIDE ADEQUATE PROTECTION**

These jointly administered cases (the "Cases") came before the court on the motion (the "Motion") of the debtors (the "Debtors") for entry of a final order authorizing them to use cash collateral and provide adequate protection. Appearances were noted in the record. Based on the documents on file with the court, and on the record and argument at the hearing,

**IT IS HEREBY FOUND THAT**:

1. On August 4, 2011 (the "Petition Date"), each of the Debtors filed a petition with the court under chapter 11 of title 11 of the United States Code commencing the Cases. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. An Official Committee of Unsecured Creditors (the "Committee") has been appointed in the Cases.

2. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Jointly administered estates of the following Debtors: Lyman Holding Company Case No. BKY 11-45190, Lyman Lumber Company Case No. BKY 11-45191, Automated Building Components, Inc. Case No. BKY 11-45192, Building Materials Wholesalers, Inc. Case No. BKY 11-45193, Carpentry Contractors Corp. Case No. BKY 11-45194, Construction Mortgage Investors Co. Case No. BKY 11-45196, Lyman Development Co. Case No. BKY 11-45199, Lyman Lumber Wisconsin, Inc. Case No. BKY 11-45201, Lyman Properties, L.L.C. Case No. BKY 11-45202, Mid-America Cedar, Inc. Case No. BKY 11-45203, Woodinville Lumber, Inc. Case No. BKY 11-45204, Woodinville Construction Services, L.L.C. Case No. BKY 11-45206.

3. The Debtors are party to a Tenth Amended and Restated Credit Agreement dated as of January 27, 2011 (the "Credit Agreement") and/or other related "Loan Documents" (as defined in the Credit Agreement)(collectively, the "Pre-Petition Loan Documents"), among the Debtors and certain pre-petition secured lenders (the "Pre-Petition Lenders").[2]

4. Prior to the Petition Date the Pre-Petition Lenders made certain "Credit Extensions" (as defined in the Credit Agreement) to the Debtors under the Pre-Petition Loan Documents. As a result of such Credit Extensions and other accommodations, on the Petition Date the Debtors owed to the Pre-Petition Lenders certain "Obligations" (as defined in the Credit Agreement) (the "Pre-Petition Obligations"). The total amount of the Pre-Petition Obligations outstanding as of the Petition Date was not less than $19,027,000.00, plus interest, charges, expenses, fees (including reasonable attorneys' fees) and any other sums chargeable to the Debtors under the Pre-Petition Loan Documents. The Pre-Petition Obligations are valid, binding, and enforceable obligations of the Debtors in accordance with the terms set forth in the Pre-Petition Loan Documents, and were due and payable as of the Petition Date, in full, without offset, deduction or counterclaim.

5. Prior to the Petition Date the Debtors consensually granted to the Pre-Petition Lenders security interests in and liens on the "Loan Collateral" (as defined in the Credit Agreement)(the "Pre-Petition Collateral"). The Pre-Petition Lenders' interests in the Pre-

---

[2] The Debtors' secured lender group consists of (i) U.S. Bank National Association, a national banking association, as both a lender and administrative agent ("Agent") to the other lenders, and (ii) TCF National Bank, a national banking association, (iii) BMO Harris Bank N.A., successor-by-merger to M&I Marshall & Ilsley Bank, a Wisconsin state banking corporation, (iv) Bank of America, N.A., a national banking association, successor through merger to Bank of America National Trust & Savings Association, a national banking association, (v) Wells Fargo Bank, National Association, a national banking association, (vi) JPMorgan Chase Bank, N.A., a national banking association, and (vii) The Prudential Insurance Company of America, a New Jersey stock life insurance corporation.

Petition Collateral constitute valid, attached, perfected, enforceable security interests and liens thereon in accordance with the terms set forth in the Pre-Petition Loan Documents.

6. The Pre-Petition Collateral includes "cash collateral" as that term is defined in 11 U.S.C. § 363(a) ("Cash Collateral").

7. The Debtors sought and were granted authority to use Cash Collateral by orders of the court entered on August 9, 2011, ECF No. 28, August 26, 2011, EFC No. 115, and August 30, 2011, EFC No. 142 (the "Interim Orders"), pursuant to which the Pre-Petition Lenders were granted adequate protection in the form of a replacement lien, periodic payments and other relief. Pursuant to the Interim Orders, the Debtor's authority to use Cash Collateral terminates September 2, 2011.

8. Notice of the hearing and the relief requested in the Motion has been given to all appropriate parties in interest, and such notice of hearing complies with 11 U.S.C. §§ 102(1) and 363, Bankruptcy Rules 2002 and 4001(b), and applicable Local Bankruptcy Rules.

9. The terms of the Debtors' use of the Cash Collateral, as set forth in this agreed upon order, are fair and reasonable, and reflect the Debtors' and their respective managers' and directors' exercise of prudent business judgment consistent with their fiduciary duties. The permission granted herein to use the Cash Collateral is in the best interest of the Debtors' estates and creditors.

Based upon the foregoing findings, and upon the record made before this court at the hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1. Subject to any objections timely filed by the Committee under paragraph 20 below, (i) the Motion is granted in its entirety on a final basis, and (ii) all objections to the relief sought in the Motion or to the entry of this order that have not been withdrawn or resolved are overruled on their merits.

2. The Debtors are hereby authorized on a final basis to use Cash Collateral commencing on the date of entry of this order and ending on September 22, 2011 (the "Cash Collateral Use Period"), all in accordance with, and subject to the conditions and limitations set forth in, this order. The Cash Collateral Use Period may be extended without further order of the court by stipulation of the Debtors and the Pre-Petition Lenders with an attached budget filed with the court. All other parties shall have the right to object to such extension and put the matter on for an expedited hearing.

3. The Debtors may use Cash Collateral during the Cash Collateral Use Period only for ordinary and reasonable disbursements substantially consistent with the budget attached hereto as <u>Exhibit A</u> and made a part hereof (the "Budget"). The Budget may be amended from time to time with the consent of both the Debtors and Agent. Any such amended Budget shall be filed with the court and shall be in effect when filed, subject to the right of any party in interest to object. Any party so objecting may then seek an expedited hearing. However, such amended Budget shall remain in full force and effect until the court orders otherwise.

4. In the event that the Debtors and Agent are not able to agree to an amended Budget, either is authorized to move the court for a new expedited hearing on the Motion and both the Debtors and Agent shall have their respective rights to either seek or oppose the use of Cash Collateral.

5. In addition, at any time that, based on a Budget Reconciliation (as defined below), (i) the Debtors' actual net operating cash flow on a cumulative basis is more than 7.5% below the net operating cash flow reflected in the Budget, or (ii) there shall be a change that has a material adverse effect on the use, value or condition of the Debtors, their assets or the legal or financial status or business operations, taken as a whole, Agent may bring a motion seeking the termination of the Debtors' right to use Cash Collateral. In such event, both the Debtors and Agent shall have all rights to either seek or oppose the use of Cash Collateral.

6. As adequate protection for, and to the extent of, any diminution in the value of the Pre-Petition Lenders' interest in the Pre-Petition Collateral securing obligations owing to them during the Cash Collateral Use Period resulting from (i) the use of their Cash Collateral pursuant to 11 U.S.C. § 363(c), (ii) the use, sale, lease, or other diminution in value of the Pre-Petition Collateral (other than the Cash Collateral) pursuant to 11 U.S.C. § 363(c), or (iii) the imposition of the automatic stay pursuant to 11 U.S.C. § 362(a), and effective as of the Petition Date, without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements, or other agreements or documents, the Pre-Petition Lenders shall receive the following:

    a) <u>Replacement Liens</u>. The Debtors are hereby authorized to grant to the Pre-Petition Lenders, who by this order are granted, valid, binding, enforceable and perfected replacement liens on and security interests in (the "Replacement Liens") all of the Debtors' rights in, to, and under all present and after-acquired property and assets of like kind or type that would constitute the Pre-Petition Collateral in accordance with the applicable Pre-Petition Loan Documents (collectively, the "Post-Petition Collateral"; and together with the Pre-Petition Collateral, the "Collateral"); *provided, however*, that the Replacement Liens shall not attach to any claims and causes of action possessed by the Debtors under 11 U.S.C. §§ 544, 545, 547, 548, 549, or 550 ("Avoidance Actions"), or any proceeds thereof. The Replacement Liens:

        i. shall be subject only to (i) the Carve Out (as defined below), and (ii) any valid, enforceable and non-avoidable liens and security interests which

were senior to the Pre-Petition Lenders' liens and security interests as of the Petition Date.

  ii. shall be deemed to be effective and perfected as of the Petition Date without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements.

  iii. shall be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Cases, or in any other proceedings superseding or related to the Cases.

 b) <u>Periodic Payments</u>. The Debtors shall pay to the Pre-Petition Lenders during the Cash Collateral Use Period:

  i. all accrued but unpaid post-petition interest in the amounts and on the dates set forth in the Credit Agreement, and any interest not yet paid in accordance with the Interim Order.

  ii. the following payments to be applied to the principal balance due on the Pre-Petition Obligations as of the Petition Date:

   (A) (1) $1,450,000 on or before September 6, 2011, (2) $100,000 on or before September 12, 2011, and (3) $800,000 on or before September 19, 2011; *provided, however,* that if, on each such payment date, the Debtors shall determine that such scheduled payment, if made, would cause "Ending Cash" on Line 110 of the Budget to fall below $2,500,000 (the "Minimum Cash Cushion"), the Debtors shall pay only such amount as is necessary to maintain the Minimum Cash Cushion as of that date and any amounts withheld shall become payable in the following week; and

   (B) An additional $500,000 to the extent possible given the Minimum Cash Cushion, and such additional payments as may be included in an amended Budget as provided in paragraph 3 of this order.

 c) <u>Expenses</u>. Following submission of reasonably detailed invoices or statements to respective counsel for the Debtors and the Committee, and subject to the procedure outlined herein, the Debtors shall pay to Agent the reasonable, documented out-of-pocket fees and expenses of attorneys and other professional advisors retained by the Pre-Petition Lenders in connection with matters relating to the Cases. Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential or proprietary information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. The Debtors and the Committee may object to the reasonableness of the fees and expenses included in any such professional fee invoices. If an objection to a professional's invoice is filed and served on such professional within 10 days from the date of receipt by such objecting party of the relevant invoice, the Debtors only shall be

required to pay the undisputed amount of the applicable invoice, if any, and any such objection shall be resolved by the agreement of the objecting party, the Debtors, and the affected professional or by the court, with the payment, if any, of the disputed amount only occurring after such resolution. For the avoidance of doubt, professionals retained by the Pre-Petition Lenders shall not be required to file any interim or final fee applications or summaries of fees with respect thereto in connection with the such expense reimbursement. In the event that the Pre-Petition Lenders' are not oversecured as of the Petition Date, the Debtors and the Committee reserve their rights to assert that any payments made under this paragraph should be offset against the Pre-Petition Lenders' allowed secured claim, and the Pre-Petition Lenders reserve their rights to oppose such an assertion.

      d)    <u>507(b) Protection</u>. To the extent that the adequate protection granted to the Pre-Petition Lenders under this paragraph proves to be inadequate to assure the full repayment to the Pre-Petition Lenders of all Cash Collateral used by the Debtors, the Pre-Petition Lenders shall have an administrative expense claim against the Debtors under 11 U.S.C. § 507(b) (the "507(b) Claim") with priority over all other administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, subject only to the Carve Out.

      e)    <u>Reporting</u>. The Debtors shall deliver to Agent and the Committee during the Cash Collateral Use Period all items required to be delivered under paragraph 2 of the Interim Order, and:

      i.    at least twice per week, (a) an updated operations status report for each Debtor, (b) an updated receivables aging and current inventory report for each Debtor, and (c) an updated bidder status report regarding the sale of any of the Collateral.

      ii.    as soon as available, and in any event within fifteen (15) days after the fifteenth and last days of each month, (a) a detailed report indicating any change in the "Eligible Pledged Loans" (as defined in the Credit Agreement), and (b) from debtor Construction Mortgage Investors Co., a "Detailed Loan Report" (as defined in the Credit Agreement) as of such day of such month.

      iii.    on or prior to noon central time each Wednesday, (a) a written reconciliation (the "Budget Reconciliation") (on a cumulative net basis) of (i) the actual receipts and disbursements for the immediately preceding week with the budgeted receipts and disbursements for such week as provided in the Budget, and (ii) the cumulative actual receipts and disbursements for the Cash Collateral Use Period with the cumulative budgeted receipts and disbursements for the Cash Collateral Use Period as provided in the Budget; (b) the "Borrowing Base Certificate" (as defined in the Credit Agreement), which shall be based on the preceding Friday's asset levels; and (c) an updated thirteen-week rolling cash flow projection.

iv. within 7 Business Days after the end of each month, a monthly reconciliation of the actual amounts received and disbursed with the projected budgeted receipts and disbursements for the prior month.

f) <u>Right to Inspect and Audit</u>. In accordance with the applicable Loan Documents, the Debtors shall permit Agent (through its officers, senior employees, or agents, including but not limited to professionals retained in connection with the Cases) to inspect the Collateral during normal business hours upon reasonable advance notice. In addition, the Debtors shall allow Agent to periodically inspect and audit the books, records and account statements of the Debtors in order to confirm the Debtors' compliance with this order and the Budget.

g) <u>Cash Dominion</u>. All Cash Collateral of the Pre-Petition Lenders collected by the Debtors shall be immediately deposited by the Debtors with Agent.

h) <u>Right to Credit Bid</u>. As to any Collateral offered for sale at an auction, but subject to any minimum bid price applicable to all bidders and to any objections timely filed by the Committee under paragraph 20 below, the Pre-Petition Lenders shall have the right to credit bid their claims to the fullest extent permitted by law in connection with any sale, auction or other disposition of the Collateral pursuant to 11 U.S.C. § 363(k) and be treated as a Qualified Bidder, without the necessity of making any deposits required of buyers under any sales procedures order or bidding procedures; *provided, however*, that (a) to the extent that any other right of the Pre-Petition Lenders to credit bid must be established, such terms shall be established by the Debtors and the Pre-Petition Lenders or, failing that, under terms established by later order of the Bankruptcy Court at a hearing scheduled to occur at 11:30 a.m. on September 21, 2011, and (b) the right to credit bid shall not preclude the Debtors from seeking an order to limit for cause the credit bid of an assignee of or other successor to the Pre-Petition Lenders' claims.

7. As used in this order, "Carve Out" means (i) the unpaid fees of the clerk of the Bankruptcy Court and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b); and (ii) the aggregate allowed unpaid fees and expenses payable under 11 U.S.C. §§ 330 and 331, after the application of any retainers, to professional persons (including their financial advisor and/or investment banker, Alliance Management) retained pursuant to an order of the court by the Debtors or the Committee (other than the fees and expenses, if any, of any such professional persons incurred, directly or indirectly, in respect of, arising from or relating to, the initiation or prosecution of any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims or causes of action against Agent or any of the other Pre-Petition Lenders or with respect to this order or any of the Pre-Petition Loan Documents, the Interim Order, or the

Pre-Petition Obligations; *provided, however,* that the Carve Out may be used to investigate such claims and causes of action), not to exceed Three Hundred and Fifty Thousand Dollars ($350,000) in the aggregate.

8. Subject to (i) any objections timely filed by the Committee under paragraph 20 below, and (ii) except as otherwise provided in title 11 of the United States Code, if any or all of the provisions of this order are hereafter modified, vacated, reversed, or stayed by an order of the court or another court, such stay, modification, reversal, or vacation shall not affect the validity, perfection, priority, allowability, or enforceability of any lien, security interest, claims, priority, payments, or protection authorized for the benefit of any of the Pre-Petition Lenders hereunder that is granted or attaches prior to the effective date of such stay, modification, reversal, or vacation, and any use of the Cash Collateral by the Debtors pursuant to this order prior to the effective date of such modification, stay, reversal, or vacation shall be governed in all respects by the original provisions of this order.

9. This order is without prejudice (i) to the rights of the Pre-Petition Lenders at any time to seek a modification of this order, or a different cash collateral order, including a request for additional or other adequate protection or the termination of the applicable Debtors' right to use Cash Collateral, after notice and hearing, including a hearing noticed on an emergency basis; and (ii) to the rights of the Debtors at any time to seek modification and/or extension of the order, including an increased use of Cash Collateral and a modification of adequate protection, or a different order, after notice and hearing, including a hearing noticed on an emergency basis.

10. The rights of the Debtors to use Cash Collateral shall terminate upon the business day immediately following written notice (a "Termination Notice") delivered to counsel to the (i) applicable Debtor(s), (ii) the U.S. Trustee, and (iii) the Committee, indicating that one of the

events listed below has occurred and is continuing with respect to such applicable Debtor(s) (each, a "Termination Event"):

      a)     This order shall (i) not have become a final order within 45 days of the Petition Date, or (ii) have been vacated, reversed or stayed, or modified or amended in a manner that is materially adverse to the Pre-Petition Lenders without Agent's consent;

      b)     The Debtors shall fail to timely make payments required to be made by them pursuant to the terms of this order within five (5) business days from when such payment is due;

      c)     The Debtors shall fail to perform any of the requirements of this order (other than a payment obligation) and such failure shall continue un-remedied for more than five (5) business days following notice of such failure unless such non-performance is incapable of being cured;

      d)     The Debtors shall make any material misrepresentation of a fact to any of the Pre-Petition Lenders or Agent about the financial conditions of the Debtors, the nature, extent, or location of the Collateral, or the disposition or use of any of the Collateral, including the Cash Collateral;

      e)     The Debtors shall permit, without Pre-Petition Lenders' consent or court order, any superpriority claim (other than the Carve Out) or shall grant any other lien or security interest (including any other adequate protection lien), that in either case is senior or equal to the claims and liens (including the adequate protection claims and liens) of the Pre-Petition Lenders, except superpriority claims and liens senior to the Replacement Liens and 507(b) Claim relating to one or more debtor-in-possession financing facilities approved by the Court and provided to some or all of the Debtors;

      f)     Any lien or security interest granted or created under the Pre-Petition Loan Documents shall be asserted by any Debtor not to be a valid and perfected lien on or security interest in any of the applicable Collateral, with the priority required by the Pre-Petition Loan Documents;

      g)     Except as to the consignment and other UCC filings disclosed in the Motion, the court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any property constituting Collateral and such order shall not be subject to timely appeal;

      h)     The Debtors shall file any motion or other request for relief seeking to (i) dismiss any of the Cases, (ii) convert any of the Cases to a case under chapter 7 of title 11 of the United States Code, or (iii) appoint a trustee or an examiner with expanded powers pursuant to 11 U.S.C. § 1104 in any of the Cases; or

      i)     The court shall enter an order (i) dismissing any of the Cases, (ii) converting any of the Cases to a case under chapter 7 of title 11 of the United States

Code, (iii) appointing a trustee or an examiner with expanded powers pursuant to 11 U.S.C. § 1104 in any of the Cases, or (iv) making a finding of fraud, dishonesty or misconduct by any officer or director of the Debtors, regarding or relating to the Debtors.

11. Immediately upon the occurrence and during the continuation of a Termination Event, unless waived by a writing signed by Agent, Agent may declare a termination, reduction, or restriction of the ability of the Debtors to use Cash Collateral on the consensual basis provided in this order, except for the use of Cash Collateral provided in clause paragraphs 10 and 11 below (any such declaration, shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). On the Termination Declaration Date, the Debtors' right to use Cash Collateral on the basis provided in this order shall automatically cease, except as provided in paragraphs 10 and 11 below. Nothing contained herein shall be interpreted to grant the Pre-Petition Lenders relief from the automatic stay absent further order of the court.

12. At any time after the Termination Declaration Date (the "Remedies Notice Period"), the Debtors shall be entitled to seek an emergency hearing with the court seeking a determination of whether a Termination Event has occurred and may seek any other appropriate relief including the continued use of Cash Collateral on a non-consensual basis, with the rights and objections of all relevant parties reserved with respect thereto. Unless and until the court determines otherwise, the applicable Debtors shall no longer have the right to use Cash Collateral.

13. Notwithstanding the occurrence of a Termination Declaration Date, during the Remedies Notice Period the Debtors may continue to use Cash Collateral (i) for the payment of

any unpaid post-petition administrative expenses so long as such expenses were actually incurred prior to the last day of the Remedies Notice Period, (ii) to meet payroll obligations and to pay expenses critical and immediately necessary to the preservation of the Debtors and their estates incurred during the Remedies Notice Period, and (iii) to satisfy any payment obligation senior to the obligations owed to the Pre-Petition Lenders (including Professional Fees but, with respect to such fees, only to the extent of the Carve Out).

14. In not objecting to the Debtors' use of Cash Collateral under the terms set forth herein or in taking any other actions related to this order, the Pre-Petition Lenders (i) shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to the Debtors, their creditors or their estates and shall not constitute or be deemed to constitute a joint venture or partnership with any Debtor.

15. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Pre-Petition Lenders' and Debtors' right to seek any other or supplemental relief relating to the matters set forth in this order, including the right to seek additional adequate protection (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection) or the use of Cash Collateral; (b) any of the rights of the Pre-Petition Lenders or the Debtors (except in the case of the succeeding clause (i)) under the title 11 of the United States Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of

the automatic stay of 11 U.S.C. § 362, (ii) request dismissal of any of the Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of 11 U.S.C. § 1121, a chapter 11 plan or plans.

16. This order shall not be deemed to be an amendment or modification to the applicable Pre-Petition Loan Documents, and shall not be deemed to have in any way modified the scope, nature, extent, or amount of the Collateral, prepetition liens, prepetition claims, prepetition interests, or prepetition rights held by, granted, or purported to be granted, to the Pre-Petition Lenders.

17. Nothing herein shall impair or modify the application of 11 U.S.C. § 507(b) in the event that the adequate protection provided to the Pre-Petition Lenders hereunder is insufficient to compensate for any diminution in value of the Pre-Petition Collateral during the Cases. Nothing contained herein shall be deemed a finding by the court, or an acknowledgement by any of the Pre-Petition Lenders, that the adequate protection granted herein does in fact adequately protect the Pre-Petition Lenders against any diminution in value of their interests in the Pre-Petition Collateral.

18. The Pre-Petition Lenders have acted in good faith in connection with the Interim Order and their reliance on this order is in good faith.

19. Except as expressly provided herein (including the effects of the findings of fact above, subject to any objections timely filed by the Committee under paragraph 20 below), nothing in this order shall prohibit or impair the rights of the Debtors, the Committee, or any other party in interest, from (i) objecting to the amount of any claim asserted by the Pre-Petition Lenders against the Debtors, or (ii) asserting any claim, cause of action, defense and/or setoff

against the Pre-Petition Lenders that may exist under the Bankruptcy Code or applicable law. Similarly, except as expressly provided herein, nothing in this order shall prohibit or impair the rights of the Pre-Petition Lenders from asserting additional claims against the Debtors in addition to those described herein.

20. The provisions of this order shall be immediately binding upon and inure to the benefit of the Pre-Petition Lenders, the Debtors, and their respective successors and assigns, (including any trustee or other fiduciary hereafter appointed in the Cases or any successor cases as a legal representative of the Debtors or the Debtors' estates), and all other parties in interest; *provided, however*, that paragraphs 3 through 6 of the findings of fact above shall be binding on any creditor and any committee appointed in these Cases, including the Committee, unless objected to within forty-five (45) days after the entry of this order, which number of days shall not be extended absent written consent of Agent.

Dated: September 2, 2011

/e/ Dennis D. O'Brien
Dennis D. O'Brien
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *09/02/2011*
Lori Vosejpka, Clerk, By DLR, Deputy Clerk

# **EXHIBIT A**

# Lyman Lumber Company

## Weekly Cash Flow Budget

| | | Actual | | | | | | Projected | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning>>> | 8/8/2011 | 8/15/2011 | 8/22/2011 | 8/29/2011 | 9/5/2011 | 9/12/2011 | 9/19/2011 | 9/26/2011 | 10/3/2011 | 10/10/2011 | 10/17/2011 | 10/24/2011 |
| **Beginning Cash** | 6,677,304 | 7,129,354 | 7,482,820 | 6,270,021 | 5,188,504 | 3,953,028 | 3,977,360 | 4,168,883 | 4,445,707 | 3,981,738 | 3,895,090 | 4,274,073 |
| **Operational Sources of Cash** | | | | | | | | | | | | |
| Accounts Receivable Sale | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,211,131 |
| Core Business Prepetition Collections | 0 | 0 | 0 | 343,610 | 343,610 | 343,610 | 343,610 | 343,610 | 286,341 | 286,341 | 286,341 | 0 |
| Core Business Postpetition Collections | 0 | 0 | 0 | 2,876,862 | 2,665,828 | 2,665,828 | 2,665,828 | 2,647,711 | 2,647,711 | 2,647,711 | 2,647,711 | 0 |
| Core Business Equipment Sale | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,683,828 |
| Core Business Inventory Liquidation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,082,253 |
| Non-Core Business Real Estate Sales | 0 | 0 | 0 | 0 | 300,000 | 0 | 0 | 0 | 0 | 0 | 0 | 1,728,000 |
| Non-Core Business Equipment Sale | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,661,175 |
| Non-Core Business Inventory Liquidation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 314,638 |
| Non-Core Business Prepetition Collections | 0 | 0 | 0 | 107,775 | 107,775 | 107,775 | 107,775 | 107,775 | 89,813 | 89,813 | 89,813 | 89,813 |
| Non-Core Business Postpetition Collections | 0 | 0 | 0 | 348,765 | 348,765 | 348,765 | 348,765 | 69,753 | 69,753 | 69,753 | 69,753 | 0 |
| **Total Operational Sources of Cash** | 3,269,008 | 3,741,118 | 2,012,903 | 3,677,013 | 3,765,979 | 3,465,979 | 3,465,979 | 3,168,849 | 3,093,618 | 3,093,618 | 3,093,618 | 13,770,837 |
| **Operational Uses of Cash** | | | | | | | | | | | | |
| Core Business | | | | | | | | | | | | |
| Asset Sale Transaction Costs | 0 | 0 | 0 | 0 | 21,000 | 0 | 0 | 0 | 0 | 0 | 0 | 580,857 |
| Professional Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Inventory Purchases | 1,525,825 | 1,832,072 | 2,343,226 | 1,430,904 | 2,054,904 | 1,754,904 | 1,754,904 | 1,495,415 | 1,495,415 | 1,495,415 | 1,495,415 | 0 |
| Employee Costs | 459,984 | 1,084,075 | 168,423 | 849,437 | 437,589 | 849,437 | 437,589 | 793,067 | 408,550 | 793,067 | 408,550 | 0 |
| Property and Sales Taxes | 0 | 0 | 2,343 | 0 | 0 | 0 | 0 | 0 | 0 | 265,728 | 0 | 0 |
| Utilities | 1,704 | 5,429 | 1,204 | 80,069 | 20,069 | 20,069 | 20,069 | 20,240 | 20,240 | 20,240 | 20,240 | 0 |
| Insurance | 8,364 | 13,225 | 546 | 384,225 | 10,000 | 328,899 | 10,000 | 10,000 | 331,951 | 10,000 | 10,000 | 0 |
| Fees | 4,312 | 7,290 | 9,304 | 13,308 | 93,308 | 13,308 | 13,308 | 133,328 | 53,328 | 53,328 | 53,328 | 0 |
| Office & Yard | 49,463 | 14,712 | 28,113 | 58,537 | 58,537 | 58,537 | 58,537 | 50,031 | 50,031 | 50,031 | 50,031 | 0 |
| Travel & Entertainment | 17,617 | 9,844 | 1,721 | 9,380 | 9,380 | 9,380 | 9,380 | 9,158 | 9,158 | 9,158 | 9,158 | 0 |
| Other Operating | (496) | 2,462 | 4,180 | 4,995 | 4,995 | 4,995 | 4,995 | 4,679 | 4,679 | 4,679 | 4,679 | 0 |
| Vehicle and Property | 43,248 | 54,637 | 81,041 | 75,868 | 75,868 | 75,868 | 75,868 | 78,824 | 78,824 | 78,824 | 78,824 | 0 |
| Total Core Business | 2,110,020 | 3,023,746 | 2,640,100 | 2,906,724 | 2,785,651 | 3,115,398 | 2,384,651 | 2,594,742 | 2,452,176 | 2,780,470 | 2,130,224 | 580,857 |
| Non-Core Business & Real Estate Assets | | | | | | | | | | | | |
| Asset Sale Transaction Costs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees | 0 | 0 | 0 | 0 | 616,000 | 0 | 0 | 0 | 291,000 | 0 | 0 | 0 |
| US Trustee | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 20,000 | 0 |
| Inventory Purchases | 144,031 | 246,054 | 84,714 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Employee Costs | 508,924 | 70,749 | 393,740 | 137,379 | 70,771 | 137,379 | 70,771 | 124,189 | 63,976 | 124,189 | 63,976 | 0 |
| Property and Sales Taxes | 0 | 0 | 0 | 777,320 | 60,000 | 0 | 0 | 0 | 750,000 | 275,172 | 0 | 0 |
| Utilities | 1,793 | 325 | 4,011 | 6,850 | 6,850 | 6,850 | 6,850 | 23,358 | 0 | 0 | 0 | 0 |
| Insurance | 6,037 | 0 | 89,210 | 23,514 | 3,000 | 72,836 | 3,000 | 3,000 | 60 | 60 | 60 | 0 |
| Fees | 0 | 69 | 0 | 250 | 250 | 250 | 250 | 0 | 0 | 0 | 0 | 0 |
| Office & Yard | 848 | 2,175 | 579 | 3,191 | 3,191 | 3,191 | 3,191 | 0 | 0 | 0 | 0 | 0 |
| Travel & Entertainment | 6,721 | 3,061 | 2,488 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Operating | (629) | (250) | (471) | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 0 |
| Vehicle and Property | 39,213 | 7,569 | 11,332 | 5,368 | 5,368 | 5,368 | 5,368 | 0 | 0 | 0 | 0 | 0 |
| Total Non-Core Business & Real Estate Assets | 706,938 | 329,752 | 585,602 | 954,246 | 765,804 | 226,249 | 89,804 | 150,922 | 1,105,411 | 399,796 | 84,411 | 0 |
| **Total Operational Uses of Cash** | 2,816,958 | 3,353,498 | 3,225,702 | 3,860,970 | 3,551,455 | 3,341,647 | 2,474,455 | 2,745,664 | 3,557,587 | 3,180,266 | 2,214,636 | 580,857 |
| **CONTINGENCIES** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cumulative Use of Cash | 2,816,958 | 6,170,456 | 9,396,158 | 13,257,128 | 16,808,583 | 20,150,230 | 22,624,685 | 25,370,349 | 28,927,936 | 32,108,202 | 34,322,837 | 34,903,695 |
| **(1) Net Operating Cash Flow** | 452,050 | 387,620 | (1,212,799) | (183,958) | 214,524 | 124,332 | 991,524 | 423,185 | (463,969) | (86,648) | 878,982 | 13,189,980 |
| **Cumulative Net Operating CF** | 452,050 | 839,670 | (373,129) | (557,086) | (342,563) | (218,231) | 773,292 | 1,196,477 | 732,508 | 645,861 | 1,524,843 | 14,714,823 |
| **Investing Cash Flow** | | | | | | | | | | | | |
| Net Capital Expenditures | | (34,154) | | | | | | | | | | |
| **(2) Net Investing Cash Flow** | 0 | (34,154) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Financing Cash Flow** | | | | | | | | | | | | |
| Line of Credit Interest | 0 | 0 | 0 | (147,559) | 0 | 0 | 0 | (146,361) | 0 | 0 | 0 | (139,361) |
| Line of Credit Principal | 0 | 0 | 0 | (750,000) | (1,450,000) | (100,000) | (800,000) | 0 | 0 | 0 | (500,000) | (15,427,000) |
| **(3) Net Financing Cash Flow** | 0 | 0 | 0 | (897,559) | (1,450,000) | (100,000) | (800,000) | (146,361) | 0 | 0 | (500,000) | (15,566,361) |
| **Weekly Net Cash Flow (1 + 2 + 3)** | 452,050 | 353,466 | (1,212,799) | (1,081,517) | (1,235,476) | 24,332 | 191,524 | 276,823 | (463,969) | (86,648) | 378,982 | (2,376,381) |
| **Unadjusted Ending Cash** | 7,129,354 | 7,482,820 | 6,270,021 | 5,188,504 | 3,953,028 | 3,977,360 | 4,168,883 | 4,445,707 | 3,981,738 | 3,895,090 | 4,274,073 | 1,897,691 |
| Medical Claim Reserves & APA Holdbacks | (1,095,244) | (1,015,070) | (959,648) | (1,109,648) | (1,409,648) | (1,409,648) | (1,409,648) | (1,409,648) | (1,409,648) | (1,409,648) | (1,409,648) | (959,648) |
| **Ending Cash** | 6,034,110 | 6,467,750 | 5,310,373 | 4,078,856 | 2,543,380 | 2,567,712 | 2,759,235 | 3,036,059 | 2,572,090 | 2,485,442 | 2,864,424 | 938,043 |