UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:  Chapter 11 Case No. 11-45190

Lyman Holding Company, et al.,  (Jointly Administered)

Debtors.[1]

# DEBTORS' AUCTION REPORT ("CORE BUSINESS")

Lyman Holding Company and the other debtors referenced below (collectively, the "Debtors"), provide the following auction report on the bids received and the auction held on October 5, 2011 regarding the proposed sale of the Debtors' assets (the "Auction Report").[2]

1. This Auction Report relates to the sale of what is referred to in the Sale Motion (Docket # 19) as the "Core Business" is in reference to the assets that are the subject of the Asset Purchase Agreement described in the Sale Procedures Order (Docket # 151).

2. The Auction was scheduled for and was held on October 5, 2011 at the offices of Fredrikson & Byron, P.A., Debtors' Chapter 11 counsel. In attendance were counsel and representatives of the Debtors; U.S. Bank, Agent for the Debtors' lender; TCF National Bank, the Committee of Unsecured Creditors ("Committee"), the Stalking Horse and the other Qualified Bidders. Prior to the Auction, a list of Qualified Bids along with the bid packages were provided to all the parties as required under the Bidding Procedures.

---

[1] Jointly administered estates of the following Debtors: Lyman Holding Company Case No. BKY 11-45190, Lyman Lumber Company Case No. BKY 11-45191, Automated Building Components, Inc. Case No. BKY 11-45192, Building Materials Wholesalers, Inc. Case No. BKY 11-45193, Carpentry Contractors Corp. Case No. BKY 11-45194, Construction Mortgage Investors Co. Case No. BKY 11-45196, Lyman Development Co. Case No. BKY 11-45199, Lyman Lumber Wisconsin, Inc. Case No. BKY 11-45201, Lyman Properties, L.L.C. Case No. BKY 11-45202, Mid-America Cedar, Inc. Case No. BKY 1145203, Woodinville Lumber, Inc. Case No. BKY 11-45204, Woodinville Construction Services, L.L.C. Case No. BK 11-45206.

[2] Unless otherwise defined in this Auction Report, all capitalized terms have the meaning ascribed to them in the Sale Motion.

3. The following parties submitted Qualified Bids as to the Core Business.

   a. The Stalking Horse, SPH Group Holdings LLC as assignee of SP Asset Management LLC, as the buyer under the Asset Purchase Agreement described in the Sale Procedures Order ("SPH")

   b. BEP/Lyman, a newly formed affiliate of BlackEagle Partners fund, L.P. ("BlackEagle")

   c. Lyman, LLC, a newly formed affiliate of Gregory R. Palen ("Palen")

   d. BBC Lyman, LLC, a newly formed affiliate of Bixby Bridge fund I, LLC and of Meriturn partners, LLC ("Meriturn")

4. Each of the bidders was a Qualified Bidder as set forth in the Bidding Procedures approved by the Court and attached to the Sale Procedures Order. Among other things, each had provided a signed nondisclosure agreement, financial disclosure, proof of authority to bid, a signed asset purchase agreement and a deposit in the amount of $1,000,000.

5. The Stalking Horse Bid was in the total amount of $18,000,000, including the assumption of certain debts. Each of the three other bids was in the required amount of $19,000,000.

6. The auction was conducted by Alliance Management, Debtors' financial consultant and investment banker ("Alliance"). The auction commenced at about 10:20 a.m., shortly after all bidders arrived. After a brief introductory process the parties in attendance were given another copy of the Bidding Procedures and a copy of newly-prepared Bidding Rules, which were prepared to describe the bidding sequence and to generally guide the process. Thereafter the Debtors and their counsel and financial advisors met separately with each of the four bidders to discuss the particulars of each of the asset purchase agreements and requests of the Debtors for changes.

7. After they were satisfied that the various asset purchase agreements were sufficiently similar to permit competitive bidding, the bidding began.

8. The three overbids of $19,000,000 were determined to be superior to the Stalking Horse bid. The Stalking Horse, SPH was given the opportunity to overbid, which it did in the amount of $19,250,000, consisting of $18,000,000 in cash and assumptions, credit for the break-up fee of $750,000 and credit for its agreement to change its asset purchase agreement to remove a limitation that would have prohibited the estate from pursuing avoidance claims ("Avoidance Claim Waiver") for which it received a credit of $500,000. Each of the other bidders agreed to the avoidance claim. Thereafter bidding continued by BlackEagle, Palen, Meriturn and SPH initially in $250,000 increments. During the early and middle parts of the bidding Meriturn and Palen dropped out. During the later part of the bidding the remaining two bidders bid in part by removing various conditions to closing or by excluding assets. Alliance attributed specific value to each of these changes.

9. Each bidder was given sufficient opportunity to consider the bids made by the other bidders. There were numerous recesses for the parties to consult and determine how to proceed. The Debtors, with the assistance of their professionals, including Alliance, provided bid valuations after each bid to the bidders for this purpose. Alliance and the Debtors and counsel consulted with the representatives of the Committee and of the lenders at all important stages.

10. At one point in the process, the remaining bidders and the Debtors were discussing waivers of a condition to close related to new union contracts. A dispute developed between SPH and BlackEagle over events that had occurred in the negotiations with the unions. As a result, the Debtors adjusted the rules such that a waiver concerning the new union contracts would not be given bidding credit. Further bidding was to be in cash. Both SHP and BlackEagle agreed to continue bidding and to not object to sale process with respect to the union contract

issue. Debtors also agreed to release SPH from any obligation to be the back-up bidder. It was agreed that if SPH was the second highest bidder, its role as a back-up bidder would be optional to it. The auction concluded at approximately 11:25 p.m.

11. Based on the Debtors' evaluation of the bids submitted and the results of the auction, the Debtors have determined that the bids submitted by the following "Prevailing Bidders" are the highest and best bids submitted and respectfully request that the Court approve them as the Prevailing Bidders:

    a. BlackEagle. The gross value of its bid is $ 23,750,000. That included credits for the Avoidance Claims Waiver, for a commitment to be a back-up bidder, for removal of the Automated Building Components Kitchen real property, and for waivers relating to the assumption of mortgages, employment contracts and environmental due diligence. These credits totaled $1.3 million.

    b. SPH. The gross amount of its bid is $23,700,000, which included the same $1.3 million in credits.

12. Neither BlackEagle or SPH are related to the Debtors in any way and are purchasers in good faith. The auction process was spirited and protracted and yielded the highest and best results for the estate. It appears at this time that the proceeds of this sale and the sale and liquidation of other assets will yield sufficient proceeds to pay secured creditors and administrative expenses in full and also provide a dividend for unsecured creditors. The sale captures the going concern value of a Midwest institution and saves approximately 530 jobs.

13. The Debtors intend to file the asset purchase agreements of BlackEagle and SPH prior to the Sale Approval Hearing if possible.

|  |  |
|---|---|
|  | FREDRIKSON & BYRON, P.A. |
| Dated: October 6, 2011 | */e/ James L. Baillie*<br>James L. Baillie (#3980)<br>Cynthia A. Moyer (#211229)<br>Douglas W. Kassebaum (#0386802)<br>Sarah M. Gibbs (#0390238)<br>200 South Sixth Street, Suite 4000<br>Minneapolis, MN 55402<br>Phone (612) 492-7000<br>Fax (612) 492-7077<br>jbaillie@fredlaw.com<br>cmoyer@fredlaw.com<br>dkassebaum@fredlaw.com<br>sgibbs@fredlaw.com<br><br>ATTORNEYS FOR DEBTORS |

4999592_1

# VERIFICATION

I, James Cullen, am a principal of Alliance Management. Based upon my personal information and belief, I declare under penalty of perjury that the facts set forth in the preceding Auction Report are true and correct, according to the best of my knowledge, information and belief.

Dated: October 6, 2011          Signed: _____
                                        James Cullen

4999592_1